Searight, Thornton & Co. *vs.* Albert B. Payne and others.

## October Term, 1874.

Statute of frauds—Corporation—Officers.—Where goods are sold, and credit given to a corporation, an officer and stockholder cannot be held personally liable for the debts thus created, upon a promise to pay or see them paid, unless such promise be in writing.

Corporation—Liability of stockholder.—An officer and stockholder of a corporation who states to a creditor that the corporation is, in his opinion, solvent, does not thereby make himself liable to the creditors, if the statement was made in good faith, although the corporation was, in fact, at that time insolvent.

Corporation—Ultra vires—Stockholder.—The purchase of goods by a corporation for the use of its employés, being within its charter, the fact that it sells these goods by retail to third persons is no ground for holding the stockholders liable as partners, even if such sales be *ultra vires*.

THE CHANCELLOR:—The Phœnix Manufacturing Company was established in 1867, with a twofold object—one to manufacture pig iron at Worley Furnace, in Dickson county, the other to work up the product of the furnace into machinery and castings of various kinds, at a foundry and machine shop in Nashville. It continued in existence until about May, 1868, when, having previously sold the foundry property at Nashville, it was merged in the Worley Furnace Company. This was accomplished by valuing the property, real and personal, of the Worley Furnace, as owned by the Phœnix Company, deducting the indebtedness of the latter company, charging off $10,000 of the residuum to profit and loss, to cover accrued interest on the real estate notes, and to provide for any depreciation and other contingencies, and taking the balance, $47,000, as a basis for the stock subscription to the new company. The Worley Furnace Company was chartered by the legislature on the 27th of February, 1868, with all the powers and privileges, etc., of the Tennessee Manufacturing Company. This latter company was chartered with the right " of employing its capital and credit in any industrial, mechanical, or manufacturing pursuit it may deem advisable," and to receive and hold such real, personal, and mixed property "as it may deem expedient for conducting its operations." The capital stock of the Worley Furnace Company was fixed at $51,450, the charter of the Tennessee Manufacturing Company requiring a subscription of $50,000 to authorize an organization. The amount thus fixed was, upon the opening of the books, subscribed by seven persons, of whom the defendants, Payne, Trenbath, McCrory, and Foster's intestate, Nash, were parties. Of this sum $47,000 were paid in the property of the Worley Furnace, valued as aforesaid, and the residue was paid, if paid at all, in money. The corporation thus organized elected Nash president, and Payne secretary, and went into operation in May, 1868, and continued business until the 28th of April, 1870, when it made a deed of trust of all its prop-

erty for the benefit of creditors, giving a preference to the claims of the laborers for wages. The creditors filed bills, and the trust property was sold, and only paid the preferred wages and the balance of unpaid purchase money for land, leaving the general creditors, including the complainants, unpaid.

The business of the corporation was, properly, the making of pig iron, but in carrying on its operations it was found necessary to keep what is called a supply store, in which a stock of merchandise, such as is usual in country stores, was kept to supply the hands employed, and, doubtless, other persons who chose to buy.

In conducting this part of the business purchases were made from various mercantile firms in Nashville, and, among others, from complainants. The purchases were made in the name of the corporation, and the charges made to it on the books of the merchants, including complainants, and the accounts closed, from time to time, by notes of the corporation. The credit was, according to the accounts and notes, and all the parol proof, given to the Worley Furnace Company as a corporation. That company, although its operations were carried on at the furnace, in Dickson county, kept its books, by a competent book-keeper, at Nashville, a fact well known to the complainants and other merchants. The purchases of goods from the complainants seem to have been made exclusively by Payne, as secretary of the company. He admits that he always represented the fact, as he honestly thought it was, that the corporation was solvent, and would be able to pay its debts. The same representations were probably made by Nash. Neither of them ever gave a statement in writing, or otherwise, so far as appears, of the financial condition of the company at any one time, nor were they, or either of them, asked for such a statement. Nor does it appear that complainants ever examined the books of the company, or asked permission to examine them. They were content with general assurances of solvency.

12

Large payments were, from time to time, made on the complainants' claims, leaving still due the several amounts mentioned in the bill. The complainants seem, also, to be assignees of other claims of the same character.

The present bill is filed for the purpose of holding the defendants individually liable for the balance due upon these purchases of goods, on various grounds, which may be thus arranged:

1st. That they promised to pay or see said claims paid.

2d. That they had not paid up their subscriptions of stock.

3d. That they had fraudulently represented the corporation as solvent when, in fact, it was insolvent.

4th. That the defendants were not incorporated for the purpose of merchandising, and that, to the extent of their purchase of goods, they were merely partners.

5th. That the whole concern was a fraud and a swindle, and the charter a mere cloak, and no protection.

The allegation of the bill that the defendants promised to pay the complainants' debt themselves is expressly denied by the answer, and not sustained by the proof. The testimony of the complainants themselves shows that the sales were made, and the credits given, exclusively to the Worley Furnace Company as a corporation. Any promise by the defendants to pay such a debt would be within the statute of frauds, and must be in writing to be binding.

The attempt to charge the defendants for unpaid subscription of stock is put an end to by the plea of a former suit pending, and the ruling of the court upon it. That point cannot be made in this suit. See *Searight, Thornton & Co.* v. *Payne*, 1 Tenn. Ch. 186.

The allegation of the bill that the defendants, or any of them, had fraudulently represented the corporation to be solvent when, in fact, it was not is denied by the answers, and not sustained by the proof. That the defendant Payne did assure the complainants that the company was, in his

opinion, solvent, is admitted by him. There is, perhaps, no competent evidence of any such assurance by Nash, and no evidence at all that either of the other defendants ever made any representations on the subject. That the corporation was actually insolvent, and perhaps from its .very commencement, if its debts had come down upon it at any one time, is, I think, almost certain. But there is not the least pretence for charging the defendants, or either of them, with wilfully misrepresenting its condition, or making any statement in regard to it other than what he thought, at the time, was substantially true. Payne, who is really the only man properly amenable to the complainants on this ground of relief, if any one be amenable, showed his faith by his works, and is by far the heaviest loser in the whole business. It was simply a mistake on his part, as is so often the case with sanguine men in large enterprises.

The weight of authority, both English and American, is that third persons, not parties to the contract, should only be responsible for statements known by them to be false, or made in bad faith—at any rate where the statements are expressly, or from their very nature, matters of opinion. *Collins* v. *Evans*, 5 Q. B. 820 ; *Rawlings* v. *Bell*, 1 C. B. 959 ; *Moens* v. *Heyworth*, 10 M. & W. 147 ; *Taylor* v. *Ashton*, 11 M. & W. 401 ; *Tryon* v. *Whitmarsh*, 1 Metc. 1 ; *Russell* v. *Clark*, 7 Cr. 69 ; *Lord* v. *Goddard*, 13 How. 198. And this doctrine has been applied to cases where the alleged misrepresentations were made by directors of a corporation touching its solvency. *Jackson* v. *Tarquand*, Law Rep. 4 H. L. 305 ; 10. M. & W. 147 ; 11 M. & W. 401.

The record develops on this point a state of facts of everyday occurrence in the period in which these events transpired. Men entered into schemes of speculation, fostered by the prevailing high prices, and hoped on until their fortunes were wrecked by the continued fall in values ; and the merchant and farmer furnished supplies, and trusted to the same chances that were misleading all parties. The means of accurately ascertaining the condition of the Wor-

ley Furnace Company were open to the complainants, but they preferred to trust the sanguine assurances of its officers, rather than take the trouble of investigating for themselves. It is entirely an afterthought, not warranted by the facts, to charge those officers with a wilful and fraudulent perversion of the truth.

The defendants were certainly not incorporated for the purpose of carrying on the ordinary business of a merchant. Nor do I think that the charter, broad as it is, authorized the corporation to conduct a common country store. But it clearly had a right to purchase supplies for its own employés, and pay them their wages in such supplies instead of money. The complainants sold to them as a corporation for such purposes as were legitimate and proper. If the corporation violated its charter by going further, that was a matter between it and the state, with which the complainants had nothing to do. The corporation had a legal existence, and the complainants, having traded with it, cannot now change their own contract. If there had been no corporation at all, the question would have been altogether different. *Barrow* v. *Nashville & Charlotte T. P. Co.*, 9 Humph. 304; *Crutcher* v. *Nashville Bridge Co.*, 8 Humph. 403.

The last, and, to judge from the elaborate argument of one of the learned counsel of the complainants, the main, ground of the bill is that the whole concern was a fraud and a swindle, the charter a mere cloak, and the stockholders liable as individuals. This position has been lengthily argued, and warmly pressed upon the court. But I am unable to find the least warrant for it in the proof. The complainants' own proof utterly fails to show any fraud whatever. The entire reliance, in the argument submitted, was upon the facts developed by the defendants' testimony. I have not thought it necessary to follow the learned counsel in the line of argument pursued. Suffice it to say that, upon a careful reading of the entire record, after having previously heard it read in open court, I am of opinion that

the corporation was organized, and the business entered upon and conducted, in the utmost good faith; that the complainants themselves were fully aware of the fact that its stock consisted of the property of the Worley Furnace, and that the work was conducted in the usual way, in the expectation of eventually becoming profitable; and that they had at all times the means of ascertaining for themselves the exact condition of the corporation. They have suffered loss in the transaction, but so have the stockholders themselves, and to a far larger amount. There is no just ground whatever for the attempt to make these stockholders individually liable.

The bill must be dismissed, with costs.