SAMPSON B. LORD AND GEORGE W. JENNESS, PLAINTIFFS IN ERROR, *v.* JOHN GODDARD.

Where an action was brought against certain persons for giving a commercial letter of recommendation with intention to defraud and deceive, whereby the party to whom the letter was addressed gave credit and sustained a loss, the question for the jury ought to have been whether or not there was fraud and an intention to deceive, in giving the letter.

If there was no such intention, if the parties honestly stated their own opinion, believing at the time that they stated the truth, they are not liable in this form of action, although the representation turned out to be entirely untrue.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of New Hampshire.

Goddard was the plaintiff below, and Lord and Jenness the defendants.

The declaration in two counts alleged that the plaintiffs in error, October 28, 1847, intending to deceive and defraud the

defendant in error, wrongfully and deceitfully made and signed a letter of recommendation in favor of E. K. West and A. W. Daby, addressed to the defendant in error, in which they represented they had full confidence in West & Daby, dealers in coal, lumber, &c., that they were men well worthy of credit, and good for what they wished to purchase, and that West was visiting Bangor for the purpose of purchasing lumber for the New York market, and did thereby falsely, fraudulently, and deceitfully cause and procure the defendant in error to sell, and that he, confiding in the statements, on the 9th of November, 1847, did sell to West & Daby certain timber on credit, &c. Whereas, in fact, West & Daby were not worthy of credit, and that the plaintiffs in error well knew the same, and that West & Daby have not paid, &c.

The plaintiffs in error pleaded severally, not guilty, on which issue was joined.

The defendant in error offered, in support of his declaration, the letter addressed to him, as follows, viz.:

" To John Goddard, Esq., Bangor, Me.

" Sir, — We the undersigned have full confidence in Messrs. E. K. West and A. W. Daby, dealers in coal, lumber, lime, &c. They are men well worthy of credit, and good for what they wish to purchase.   The bearer of this, Mr. E. K. West, is visiting your city for the express purpose of purchasing lumber for the New York market.            Yours respectfully,

S. B. LORD,
GEORGE W. JENNESS.

"*Portsmouth, N. H., October, 28th,* 1847."

In July, 1850, the cause came on for trial, when the jury, under the instructions of the court, found a verdict for the plaintiff for $2,300.

The bill of exceptions was very comprehensive.  It began with reciting the writ, the declaration, and other pleadings, then recapitulated the evidence of two persons with all the interrogatories and cross-interrogatories, and also the evidence of seven persons taken upon the stand.   It is not necessary to recite any of this, as the point stated in the instructions of the court was the only matter brought into discussion.

The evidence being closed, the counsel for the defendants then prayed the honorable court to instruct the jury, that, in order to maintain the plaintiff's declaration, it must be proved that the representations made were false, and that the defendants made them knowing they were false, and intending to defraud the plaintiff; and that, if the defendants made the representations on such information as they believed to be true,

whether that information was true or false, this action cannot be maintained. The defendants further requested the honorable court to charge the jury, that if the plaintiff had not proved, to the satisfaction of the jury, either that the defendants gave the recommendation in this case knowing that it was false, and intending to defraud the plaintiff, or that they gave it without any information of the credit or means of West & Daby; or if the jury believe that the defendants gave such information respecting said West & Daby as said defendants believed to be true and sufficient, whether that information was true or false, and whether it was sufficient or not, the defendants were entitled to a verdict.

But the honorable court declined to do this, and did not charge the jury in the terms and manner, and to the extent prayed; but the honorable court did instruct the jury upon the subject-matter so prayed for as follows : that, as a general rule, one ground upon which to maintain the plaintiff's declaration is, it must be proved that the representations made were false, and that the defendants made them knowing they were false, and intending to defraud the plaintiff; and that if the defendants made the representations on such information as they believed to be true, whether that information was true or false, the action cannot be maintained; but a party, if stating positively that a person is entitled to credit, should do it from his own knowledge, or from full and proper inquiries; and then he is not liable if the debtor is insolvent, unless the jury see circumstances in the case, of real fraud. But if a party state this positively as to the credit of an individual, and does it ignorantly, not knowing the credit of the person recommended, and without making full and proper inquiries, and the statements turn out to be false, the jury may infer that those so recommending did wrong, and deceived, because they must know that third persons are likely to rely on their stating what they personally know, or had duly inquired about, or what they had good reason to suppose their information as to it was sufficient and true. If the defendants in this case did not make the recommendation upon such authority or information as you may think, under the instructions, they ought to have acted upon, you will charge them.

Whereupon the counsel for the defendants did then and there except to the aforesaid refusal, and the instructions and charge of the honorable court.

Upon this exception the case came up to this court.

It was argued by *Mr. Norris*, for the plaintiffs in error, and *Mr. Washburn*, for the defendant in error.

*Mr. Norris*, for the plaintiffs in error.

I. Both counts in the declaration allege, not only that the plaintiffs in error, intending to deceive and defraud the defendant in error, wrongfully and deceitfully made the representations alleged, and did thereby falsely, fraudulently, and deceitfully cause him to sell the lumber to West & Daby on a credit; but they allege, also, that the plaintiffs in error well knew the representation to be false.·

In making these averments the pleader but complied with the ordinary rules of pleading. It was necessary that the declaration should allege in some form, substantially, that they had knowledge of the falsity of their representations, or an actual intent to defraud under circumstances that made knowledge immaterial.

It is essential, in order to support an action of this character, that such knowledge should be proved, and found by the jury, or at least that an actual intent to defraud should be shown.

That knowledge of the falsity must be averred and proved, where the actual intent to defraud does not exist, is very clear. Pasley v. Freeman, 3 D. & E. 59, 60, 62, 63, &c.; Haycraft v. Creasey, 2 East, 92; Ashlin v. White, Holt, N. P. R. 387; Ames v. Milward, 8 Taunt. 637; Foster v. Charles, 6 Bing. 396; 7 Bing. 105; Freeman v. Baker, 5 Barn. & Adolph. 797; Moens v. Heyworth, 10 Mees. & Welsby, 147; Clifford v. Brooke, 13 Vesey, 133.

The case of Collins v. Evans, in error, 5 Ad. & Ellis, N. s. 820, 827, although not upon a representation, fully sustains the principle.

The American cases are equally explicit. Russell v. Clarke's Executors, 4 Cranch, 92, 94; Tryon v. Whitmarsh, 1 Met. 1; Stone v. Denny, 4 Met. 159, 161; Fooks v. Waples, 1 Harring. (Del.) Rep. 131; Young v. Hall, 4 Ga. R. 95; Boyd's Executors v. Brown, 6 Barr's (Penn.) R. 316.

Perhaps this declaration might be supported by evidence of an actual intent to defraud, without proving knowledge of the falsity of the representations.

But there must be fraud. Lord v. Colley, 6 N. H. Rep. 99, 102; Taylor v. Ashton, 11 Mees. & Wels. 401; Stafford's Administrator v. Newsom, 9 Ired. (N. Car.) Rep. 507; Munroe v. Gardner, 3 Brevard, (S. Car.) Rep. 31; Allen v. Addington, 7 Wend. 9; Addington v. Allen, 11 Wend. 374, 382, 388, 402, 408.

All these cases are express to the point, that a mere false representation is insufficient.

In case for a false warranty, the *scienter* need not be alleged and proved. 2 East, 446; 1 How. (Miss.) Rep. 288. But this is

because the gravamen of the action is the undertaking of the defendant, and not his fraud. 2 East, 451, 452. In the present case the plaintiffs in error are not parties to a contract, and the gravamen is fraud.

II. The evidence has no tendency to prove the *scienter*, or an intent to defraud any one.

The representation by the plaintiffs in error, that they had full confidence in West & Daby, and that they were well worthy of credit, and good for what they wished to purchase, has no tendency to prove the fact to be otherwise. And the proof of the fact that it was otherwise, if proved, has no tendency to show such knowledge, or to show fraud.

But this is all the evidence to charge them. There is nothing having even a remote tendency to show that they had any suspicion that the representation was not strictly true.

There is evidence to show that they made the representation fairly.

Suppose they made it incautiously, without any such inquiry as would have been made by more careful and suspicious men? It is clear that this cannot charge them. Young *v.* Covell, 8 Johns. R. 23; 11 Mees. & Wels. 415.

The case put by Pothier, and cited with approbation by Chief Justice Kent, in Upton *v.* Vail, 6 Johns. R. 184, goes even beyond this case. " If," says Pothier, " you had only recommended Peter to his creditor as honest and able to pay, this was but advice, and not any obligation; and if Peter was at the time insolvent, you are not bound to indemnify the creditor for the sum which he loaned to Peter, by means of your advice, which he has lost, *Nemo ex consilio obligatur.* The rule is the same if the advice was given rashly and indiscreetly, without being duly informed of the circumstances of Peter, provided it was sincerely given. *Liberum est cuique apud se explorare an expediat sibi consilium.* But if the recommendation was made in bad faith, and with knowledge that Peter was insolvent, in this case you are bound to indemnify the creditor."

III. The representation in this case is, in its very nature, but the expression of an opinion, and for this reason the action cannot be maintained without showing affirmatively knowledge of its falsity. If the plaintiffs in error had made a positive assertion, as of their own knowledge, it would have been but the assertion of a strong opinion, without evidence to show knowledge of its falsity. Haycraft *v.* Creasey, 2 East, 92, which is the leading case upon this point, is explicit. See also Page *v.* Bent, 2 Met. 374; 6 N. H. Rep. 102, 103.

IV. There was nothing to leave to the jury, there being no evidence to prove knowledge or fraud by the plaintiffs in error.

V. The charge to the jury does not require them to inquire whether the plaintiffs in error had any knowledge that the representation was false, or any fraudulent purpose. But it authorizes them to find a verdict for the plaintiff in that action, notwithstanding they had no such knowledge or suspicion, and acted in entire good faith.

It leaves to the jury, in effect, the question, whether, in their opinion, the plaintiffs in error acted without sufficient caution; with directions, in that case, to charge them. Nothing, it is believed, having the character of authority, sustains such a position.

If there had been evidence to be weighed by the jury, tending to show that the plaintiffs in error acted in bad faith, (which there was not,) the jury were not instructed to consider it, and did not consider it. The allegation in the original writ that they well knew the falsity of what they represented, was neither proved nor found by the verdict.

Nothing has been tried except the question whether the jury were of opinion that the plaintiffs in error were imprudent.

VI. There are cases where a representation has been held to be fraudulent, although the party had no knowledge at the time of its falsity, and no actual intent to defraud was shown. Hazard *v.* Irwin, 18 Pick. Rep. 96; Stone *v.* Denny, 4 Met. 151; Hammatt's Executor *v.* Emerson, 27 Maine, 308; Snyder *v.* Findley, 1 Coxe, (N. J.) Rep. 48, 78; Barnett *v.* Stanton, 2 Alabama, 181; Buford *v.* Caldwell, 3 Mis. 477; Warner *v.* Daniels, 1 Woodb. & Minot, 91, 107; Mason *v.* Crosby, 1 Id. 343, 353; Smith *v.* Babcock, 2 Id. 246.

It is understood that the defendant in error relies upon this class of cases.

With the exception of the case in Coxe, (which raised a question respecting the payment of a note,) the cases just cited were founded upon representations by vendors of property, or by their agents.

How far the principle of some of these cases may be regarded as brought in question by Omrod *v.* Huth, 14 Mees. & Wels. 651, (in which, cotton being sold by the sample, upon representation that the bulk corresponded with the sample, it was held, that an action on the case by the purchaser, for a false and fraudulent representation, was not maintainable without showing that such representation was false to the knowledge of the seller, or that he acted fraudulently or against good faith in making it,) we need not stop to inquire. See also Atwood *v.* Small, 6 Clark & Finnelly, 233, 338, 447; Early *v.* Garret, 9 Barn. & Cress. 928.

It is sufficient that, taking the cases above cited as they stand, to the full extent, they do not apply to this case.

Lord et al. *v.* Goddard.

1. They are cases where the party had some interest to make the representation. Here the cause of action is not connected with any sale by the plaintiffs in error, or with any thing by which the assertion can have the character of a false warranty. The action has no foundation in a contract between the parties.

In Humphreys *v.* Pratt, 5 Bligh, Rep. N. s. 154, which might seem at first to have some tendency to sustain this action, the learned counsel for the defendants in error contended for no more than "a principle of law that he who affirms that which he does not know to be true, or that which he knows to be false, to another's prejudice, and his own gain, is a wrongdoer," and expressly admitted that, "if the party making the representation has no interest, the action may not lie, unless it is done maliciously," pp. 162, 163. The reasons of the judgment are not stated in the report, but the grounds upon which the case is to be sustained, as stated by Mr. Chief Justice Tindal, 5 Ad. & Ellis, N. s. 829, are very far from sustaining the reporter's abstract; which has no support from the report of the same case, 2 Dow & Clark, 288; Adamson *v.* Jarvis, 4 Bing. 66, may lead to the belief that the considerations suggested by Chief Justice Tindal were in truth the grounds of Lord Windford's opinion in Humphreys *v.* Pratt.

In Taylor *v.* Ashton, 11 Mees. & Wels. 415, Mr. Baron Parke says, "It is insisted that even that" [gross negligence] "accompanied with a damage to the plaintiff, in consequence of that gross negligence, would be sufficient to give him a right of action. From this proposition we entirely dissent, because we are of opinion that, independent of any contract between the parties, no one can be made responsible for a representation of this kind, unless it be fraudulently made."

2. In those cases the party asserted the fact as of his own knowledge, either in terms, or in a manner which implied that he had such actual knowledge, and this is relied on as a ground for the opinion that he was liable. 4 Met. 151, 156. In the present case the representation begins by merely stating the confidence of the parties who made it, and it is not stronger than that in Tryon *v.* Whitmarsh, 1 Met. 1.

3. From the nature of most of those cases, the party might naturally have had actual knowledge of what he asserted, and he was bound to know it before he made a positive assertion, from which he was to derive a benefit, and which entered into the contract constituting part of the *res gestæ*. It was because he might well have had the knowledge that he professed to have, that the representation was held fraudulent. 3 Mis, 477. In this case, as the plaintiffs in error lived in Portsmouth, and West & Daby in New York, there was no reason to suppose actual knowledge.

4. The difference between the case at bar and the cases referred to, is further shown by what has been already suggested. Without evidence to show that the representation was known to be false, actual knowledge of the matter stated is not to be inferred by the party to whom it is made. The representation is but the expression of an opinion, and is to be so understood.

In Pasley v. Freeman, 3 D. & E. 56, Grose, J., held the representation to be matter of judgment and opinion. Buller, J., said, " My brother Grose considers this assertion as mere matter of opinion only, but I differ from him in that respect." We naturally inquire why ? And the reason immediately follows : " For it is stated in this record that the defendant knew that the fact was false." 3 D. & E. 57.

This distinction is adverted to and recognized in Hazard v. Irwin, 18 Pick. 95, 105, and in numerous cases before cited. In Kidney v. Stoddard, 7 Met. 252, the defendant had knowledge of the falsity, and was not entitled, therefore, to say that he had merely expressed an opinion. So in Clopton v. Cozart, 13 Smedes & Marshall, 363, the representation, which had the form of an assertion made as of personal knowledge, was held not to have the character of opinion. But the decision is directly upon the ground that the defendants had knowledge of the falsity of the representation.

VII. The plaintiffs in error had in fact information that led them to the belief of the truth of the representation which they made. They had as much knowledge as they assumed to have — good ground for the confidence they expressed. This is shown by the letter to one of them from his son in New York. It is submitted that here is a most perfect defence. The representation was not made " under circumstances which manifested a recklessness of truth," but upon all the information which the defendant in error could reasonably have supposed to be in the possession of those who made it. Collins v. Evans, in error, 5 Ad. & Ellis, 820, 826, 827 ; Williams v. Wood. 14 Wend. 126, 130 ; 2 Alabama R. 187.

VIII. If there was any ground upon which the case could rightfully be submitted to the jury, it was for them to inquire whether the plaintiffs in error did or did not believe what they represented, or whether they made the assertion with the express intention of enabling West & Daby to obtain credit; whether they were able to pay or not, the plaintiffs in error being parties to an actual fraudulent intent. (The preliminary question for the court, would be, whether there was any evidence whatever to support the action on either ground.) But the charge submits no question of that character to the jury. If it had, the result must have been different.

Unless the representation of a matter as true, which was in fact false, the assertion having been made in good faith, without knowledge of its falsity, and being one in which the party neither had, nor appeared to have any interest, is sufficient to charge him in damages, as for a fraud, the defendant in error has no cause of action. This is the extent of the proof. But it is believed that no authority can be found to sustain such a proposition. The case of Evans v. Collins, 5 Ad. & Ellis, N. s. 804, which comes nearest to the enunciation of such a principle, is followed immediately by its antidote, in the shape of a reversal of the judgment, by the unanimous opinion of the judges in the Exchequer Chamber, on the very ground that knowledge of the falsity of the representation was essential to the maintenance of the action, 5 A. & E. N. s. 620. And in Barley v. Walford, 9 Ad. & Ellis, N. s. 208, Lord Denman, who delivered the opinion in Evans v. Collins, not only recognizes the reversal as settling the law, but admits the reasonableness of the doctrine. The Court of Queen's Bench had been misled by supposing that the case of Humphreys v. Pratt, in the House of Lords was an authority for the principle laid down in Evans v. Collins.

It may be said of the cases which distinctly assert, or distinctly recognize the principles contended for by the plaintiffs in error, that their name is legion, for they are many.

To those already cited may be added, Eyre v. Dunsford, 1 East, 327; Tapp v. Lee, 3 Bos. & Pul. 367, 371; Hamer v. Alexander, 5 Bos. & Pul. 241, 245; Wood v. Waine, 1 Esp. R. 442; Scott v. Lara, Peake's R. 226; Hutchinson v. Ball, 1 Taunt. 558, 564; Corbett v. Brown, 8 Bing. 33; Polhill v. Walter, 3 Barn. & Adolph. 114; Cornfoot v. Fowke, 6 Mees. & Wels. 358; Rawlings v. Bell, 2 Man. Gran. & Scott, 951, 960; Carr, ex parte, 3 Ves. & Bea. 110; McDonald v. Trafton, 15 Maine, 227; Holbrook v. Burt, 22 Pick. 554; Lobdell v. Baker, 1 Met. 93; 3 Met. 472; Benton v. Pratt, 2 Wend. 385; Gallager v. Brunell, 6 Cowen, 346, 352; Weeks v. Burton, 7 Vt. 67, 70; Ewins v. Calhoun, Id. 79; West v. Emery, 17 Vt. 583, 586; McCraken v. West, 17 Ohio, 24; Perkins v. Sterritt, Littell's Sel. Cas. 218; Chisholm v. Gadsden, 1 Strobhart, 220; Foster v. Swasey, 2 Woodb. & Minot, 217.

If the plaintiffs in error had given a guaranty, there is no evidence in the case, upon which they could have been held responsible. It will be more than passing strange, if they are to be held ex delicto, for the payment of the debt, in the shape of damages, without evidence of express fraud, intentional wrong, actual bad faith.

*Mr. Washburn,* for defendant in error.

I. The record shows —

1. That the defendant in error lived in Bangor, Maine, and the plaintiffs in error, in Portsmouth, N. H. The distance between these places is about two hundred miles.

2. That the defendant was acquainted with the plaintiffs, and would be likely to repose confidence in their representations; and that this was understood by the plaintiffs themselves. The letter from the latter, in which the representation complained of was made, was addressed to the defendant by name.

3. That West & Daby, wishing to purchase lumber, were directed by plaintiffs to defendant, with the following positive and unqualified representation — " They " (West & Daby) " are men well worthy of credit, and good for what they wish to purchase."

4. That upon this representation, West & Daby were able to purchase, and did purchase, of the defendant, a quantity of lumber, amounting in value to about $2,000.

5. That the representation was wholly untrue. That West & Daby were neither worthy of credit, nor good for what they wished to purchase.

6. That Lord had means to know the facts. That if he did not know of the insolvency of West & Daby, he was probably entirely ignorant of their situation, unless he may be supposed to have derived information respecting it from the letter of his son, who was, as the record says, proved to be unworthy of belief, and that Jenness's position was no better than Lord's.

II. If the evidence shows, or the verdict necessarily implies, as I respectfully submit is the case, all that has been stated, the following propositions and deductions are fully warranted.

The plaintiffs made an unequivocal and unqualified representation, which the defendant might well rely upon as true, and known to be true by the plaintiffs. Relying upon it he sold his lumber to West & Daby, and lost the value of it. The wrongful conduct of plaintiffs occasioned that loss, and they should be held responsible for it

A positive declaration like this carries with it the other declaration, (implied,) that the party making it knew what the pecuniary circumstances and credit of the persons recommended were; and, particularly, when he believes that another party will act upon the strength of it. It is as if the plaintiff had said to defendant, " We know all about the pecuniary circumstances and credit of West & Daby; they are well worthy of credit, and good for what they wish to purchase."

The plaintiffs did not undertake to assert a mere opinion, but they stated a fact as of their own knowledge. That statement was grossly untrue.

It is as false and fraudulent to state positively as true, as a fact, what one knows nothing about, as what one knows to be false. The same injury would be done in the former case as in the latter.

"To state what is not known to be true is just as criminal, in the eye of the law, as to state what is known to be false," under circumstances like those in this case. Buford *v.* Caldwell, 3 Mis. R. 477.

"It is perfectly immaterial, so far as regards the question of law, whether Findley knew or did now know the falsity of the facts which he represented." Snyder *v.* Findley, 1 Coxe, (N. J.) R. 48, 78; 1 Doug. R. 654. But were the plaintiffs ignorant? They were, or worse. They had no reason for believing what they asserted. The evidence throws the strongest suspicion upon their act. Jenness stands with Lord. Lord had the means of knowing the condition of West & Daby. The letter from his son, whose character he must have known, cannot relieve him. The son had "failed in business, and was unworthy of belief." Who would think to ask for a letter of recommendation from such a man as Lord, junior, but one of like character and condition? What would speak more suggestively and suspiciously of West & Daby than the letter from young Lord? *Noscitur a sociis.* It is submitted that the circumstances of the letter from the son, of the letter to the defendant, written by the daughter-in-law, who knew West in York, as she says, of the character of the son, have a tendency to raise the presumption that the plaintiffs were not entirely ignorant or innocent; that they must have known or suspected enough to dissuade them from the use of the strong language employed in the letter to defendant, if they had meant fairly by him. Did the plaintiffs make "full and proper inquiries?" or did they "make the recommendation upon such information as they ought to have acted upon?" Is the verdict of the jury negatively answering these questions, (unless they found positive knowledge on the part of the defendants,) unwarranted by the evidence?

But the plaintiffs are concluded by the terms of their letter; they cannot be permitted to say that they did not know of the insolvency of West & Daby; or to allege that their representation was not false and fraudulent.

When, to repeat, one makes a positive representation to another, who, he presumes, may act thereon, and who, he knows, has no other means of information, he cannot be permitted, after the injury is done, and done solely by reason of his act, to allege that he was ignorant, and knew nothing of what he had said, and affirmed in the most explicit language to be

true, and true of his own knowledge; for if he does not know the truth of what he says, he has no right to use terms of positive affirmation; the use of which, in such case, would be evidence of recklessness, tantamount to fraud.

Nor can he be permitted to say that he believed what he affirmed; for if he had nothing but belief or opinion in reference to the matter, he should have so expressed himself, and not employed language, the import of which was so unequivocal and decisive, as to lead the party addressed to understand that he wrote from intimate acquaintance and actual knowledge. Herein this case differs from many of the cases cited by plaintiffs. Goddard could not have supposed that the language of the plaintiffs was adopted simply to express an opinion founded on such a miserable basis as they now allege. Are not men to be held responsible for such reckless and wanton disregard of the rights of others as is shown in this case, even when considered in the most favorable aspect for the plaintiffs?

Where the legitimate consequence of a positive assertion, false in fact, is to cause an injury to an innocent party, every principle of morality and every rule of law, forbids its being made with impunity. The form of the statement implies a falsehood.—implies knowledge, and belief founded on knowledge. The falsehood in such case is wilful, and wilful falsehood imports fraud. It would be a reproach to the law if it did not furnish a remedy in a case like this.

The cases relied upon by the plaintiffs are dissimilar to this. It is believed that not one of them is applicable to the state of facts appearing upon this record. But it is believed that some of the cases cited, under the head VI., fully sustain the positions of the defendant.

Under the charge of the judge, the jury must have found, and were authorized by the evidence to find, all the facts as to knowledge, intent, belief, &c., necessary to support the action. The law, as applicable to the facts, was correctly given to the jury.

For the facts bearing upon the questions before the court, I would refer to the record at large, rather than to the abstract made by the plaintiffs.

Mr. Justice CATRON delivered the opinion of the court.

Goddard sued Lord & Jenness in the Circuit Court of New Hampshire, alleging that the defendants by letter recommended West & Daby as men well worthy of credit, and good for what they wished to purchase; that they were dealers in coal, lumber, lime, &c., and that West, one of the firm, was visiting Bangor, Maine, for the purpose of purchasing lumber for the New York market.

The letter, set forth in the declaration, was dated at Portsmouth, New Hampshire, and directed to Goddard, at Bangor, Maine. West & Daby resided in New York.

On the faith of this letter Goddard credited West & Daby for a cargo of lumber worth nearly two thousand dollars, giving them four months time : for which lumber West & Daby never paid, having been insolvent when the letter of recommendation was given, and so continued afterwards. It is clear that they were mere insolvent adventurers, without property, and entitled to no credit or confidence.

The declaration alleges that the letter was given by Lord & Jenness with an intention to deceive and defraud Goddard ; and that they did procure credit for West & Daby falsely and fraudulently. On the plea of the general issue the parties went to trial, when it appeared that Lord had a son residing in New York, who, on the 28th of October, 1847, gave a letter of introduction to West, dated at New York, and directed to Lord, the father, at Portsmouth, N. H. The letter recommended the firm of West & Daby, as fully worthy of credit, and requested that Lord, the defendant, should recommend West & Daby to others. West delivered this letter, and on the same day got the one on which the suit is founded. It was written by the wife of the younger Lord, who was in Portsmouth, at the instance of West ; he being known to her, but not known to Lord or Jenness the defendants. They seem to have acted on the information contained in the younger Lord's letter and on the representations of his wife.

On this state of facts, the court charged the jury — 1. That, as a general rule, it must be proved that the representations made were false ; and that the defendants made them, knowing they were false, and intended to defraud the plaintiff ; and if the defendants made the representations, believing them to be true, they were not liable. " But a party, if stating positively that a person is entitled to credit, should do it from his own knowledge, or from full and proper inquiries ; and then he is not liable if the debtor is insolvent, unless the jury see circumstances in the case of real fraud. But, if a party states this positively as to the credit of an individual, and does it ignorantly, not knowing the credit of the person recommended, and without making full and proper inquiries, and the statements turn out to be false, the jury may infer that those so recommending did wrong, and deceived, because they must know that third persons are likely to rely on their stating what they personally know, or had duly inquired about, or what they had good reason to suppose their information as to it was sufficient and true. If the defendants in this case did not make the recommendation upon

Lord et al. *v.* Goddard.

such authority or information as you may think under the instructions they ought to have acted upon, you will charge them."

The jury found for the plaintiff on this charge, and the only question is whether it was proper.

The gist of the action is fraud in the defendants, and damage to the plaintiff. Fraud means an intention to deceive. If there was no such intention; if the party honestly stated his own opinion, believing at the time that he stated the truth, he is not liable in this form of action, although the representation turned out to be entirely untrue. Since the decision in Haycroft *v.* Creasy, 2 East, made in 1801, the question has been settled to this effect in England.

The Supreme Court of New York held likewise in Young *v.* Covell, 8 Johns. 23.

That court declared it to be well settled that this action could not be sustained, without proving actual fraud in the defendant, or an intention to deceive the plaintiff by false representations. The simple fact of making representations, which turn out not to be true, unconnected with a fraudulent design, is not sufficient.

This decision was made forty years ago, and stands uncontradicted, so far as we know, in the American courts

Taking the foregoing instruction together, we understand it to mean this: That if the jury believed due inquiry as to the credit of West & Daby had not been made by Lord & Jenness, and that they had signed the letter ignorantly, and regardless of the fact, whether the persons recommended were or were not entitled to credit, then the jury should charge the defendants: The real test of conduct, according to the charge, obviously being, whether Lord & Jenness ought to have accorded confidence to the younger Lord's letter, and to its sanction by his wife; and whether this information was of such a character as to justify them in writing the letter to Goddard, without further inquiry.

That this instruction, taken in its proper sense, was evasive of the true rule, and calculated to mislead the jury, is manifest, and therefore the judgment must be reversed, and the cause sent down for another trial.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of New Hampshire, and was argued by counsel, on consideration whereof, it is now here ordered and adjudged by this court

that the judgment of the said Circuit Court in this cause be, and the same is hereby reversed with costs, and that this cause be, and the same is hereby remanded to the said Circuit Court, with directions to award a *venire facias de novo.*