UNION PAC. RY. CO. v. BARNES.

... (Circuit Court of Appeals, Eighth Circuit. October 8, 1894.)

No. 440.

1. DECEIT—SALE OF LANDS.
    Neither an agreement to sell land and cause a good title thereto to be conveyed to the purchaser at a future time, nor a deed without covenants, which recites the supposed source of the grantor's title, and purports to grant and convey the land, is sufficient to support an action against the vendor for false and fraudulent representation as to his title, where he makes the agreement and deed in good faith, under color and claim of title, in the honest belief that the title and its source are good, although in fact they are both invalid.

2. VENDOR AND PURCHASER—RECOVERY OF PURCHASE MONEY.
    An action will not lie by a purchaser to recover the purchase money on failure of title in the absence of fraud or covenants to secure the title.

3. LIMITATION OF ACTION—ACTION FOR PURCHASE MONEY.
    A right of action, if any, for purchase money paid, on failure of title to realty, accrues when the money is paid and the deed obtained.

In Error to the Circuit Court of the United States for the District of Colorado.

This was an action originally brought by Thomas H. Barnes against the Union Pacific Railway Company to recover for alleged false representations as to the ownership of land purchased by plaintiff of defendant. The case was first heard in the court below

upon demurrer to the amended complaint. The judgment of the court below sustaining the demurrer was reversed upon error to this court (4 C. C. A. 199, 54 Fed. 87), and defendant allowed to answer. Pending the action, Thomas H. Barnes died, and S. Marcella Barnes, administratrix, was substituted as plaintiff. On a trial to the jury a verdict was directed for plaintiff, and defendant brought error.

Willard Teller (Harper M. Orahood and Edward B. Morgan, on the brief), for plaintiff in error.

Charles M. Campbell, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. The writ of error in this case is sued out to reverse a judgment against the plaintiff in error, the Union Pacific Railway Company, for damages for false representations in the sale of a tract of land to Thomas H. Barnes. In the lifetime of Mr. Barnes the case was before this court upon a demurrer to the complaint. It has now been tried to a jury, and the court below instructed them to return a verdict against the railway company, and upon this verdict the judgment complained of is based.

In Barnes v. Railway Co., 4 C. C. A. 199, 205, 54 Fed. 87, 92, 12 U. S. App. 1, upon the demurrer to the complaint in this action, we held that it alleged in effect that the railway company falsely represented to Thomas Barnes that it had a grant from the government of, and was the sole owner of, a certain tract of land, that it made these representations to induce him to buy this land; that these representations did induce him to purchase it, and to pay the railway company for it $2,376.60; and that the company in fact had neither claim nor color of title to, and was not in possession of, the land in question. We held that this was a statement of facts sufficient to constitute a cause of action to recover damages for false representations, on the ground that, if the company knew its representations to be false, that was a fraud of the most positive kind; and if it did not know whether its statements were true or not, and yet made the positive averments of these facts as of its own knowledge, as the complaint alleged, that was a false and fraudulent statement that it did know these to be the facts, and, as these statements caused the same damage to the vendee, the company was equally liable in either event. 4 C. C. A. 201, 54 Fed. 89, 12 U. S. App. 5. Accordingly we reversed the judgment sustaining the demurrer, and remanded the case for answer and trial. The railway company answered that the allegations in the complaint that it made these representations were untrue, and upon the trial below the only evidence in support of them was that on February 8, 1878, the Denver & Pacific Railway & Telegraph Company made a written agreement with Barnes to sell this tract of land to him on condition that he would pay to it the sum of $2,376.60 in various installments on or prior to February 8, 1883, and that it would, upon such payment, "cause to be made and executed unto the said second party [Barnes], his heirs and assigns, upon request, at the general land office of the

first party [the railway company], and surrender of this contract, a deed conveying said premises in fee simple;" and that on October 20, 1881, Jay Gould and Russell Sage, as trustees of the Union Pacific Railway Company, which is the successor of the Denver & Pacific Railway & Telegraph Company, made a deed of this land to Barnes without covenants, in which they recited that the Denver & Pacific Railway & Telegraph Company, by its mortgage or deed of trust, conveyed to certain trustees all the lands granted to it by act of congress; that they had succeeded to the rights of such trustees; and that by virtue of the deed of trust they granted, bargained, sold, and conveyed the land in question to Barnes, his heirs and assigns. It is conceded that the contract of the Denver & Pacific Railway & Telegraph Company and the deed of the trustees are to be considered in this case as the contract and deed of the Union Pacific Railway Company, and we shall speak of them henceforth as such. The record now discloses the fact that the land in dispute was a part of an odd section within the limits of a grant of lands to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific ocean under the act of July 1, 1862, and the acts amendatory thereof (12 Stat. 489), and that the title to this land would have passed to the railway company under that grant had it not been for the fact that a pre-emption or homestead claim, which had expired by limitation, or been abandoned before the agreement to sell this land to Barnes was made by the railway company, had attached to this tract before the line of the road was fixed by the filing of its map of definite location with the commissioner of the general land office. It also appears from this record that when the agreement of sale was made, and when the deed was executed, and indeed until the decision of the supreme court in Railway Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, in 1885, the railway company believed that this land, and other lands similarly situated, had reverted to the railway company, and had become a part of the grant to it when the pre-emptor or homesteader had failed to perfect or had abandoned his claim. When the decision in that case had been rendered, both the vendor and the vendee first discovered that neither of them had ever had any title to this land. Thereupon the vendee, who had been in possession under his contract of purchase and deed since 1878, filed an application for the land as a homestead, and obtained the title to it from the government under this application at an expense of some $60.

This brief summary of the facts in this case is sufficient to show that the railway company was guilty of no actual fraud, of no intention to deceive, in its attempted sale and conveyance of this land. All that it did was done in the utmost good faith, and in the honest belief that it was the owner of the land under its grant. Nor did the company make any statement as of its own knowledge that this land was within its grant, or that it was the owner of it to induce the vendee to purchase. No oral representations whatever are proved, and the vendee is forced to rely upon the agreement of sale and the deed alone for proof of his allegations of false representations.

No argument is required to show that the agreement of February 8, 1878, to sell the land and to cause a deed to be made to the purchaser conveying it in fee simple five years thereafter was no representation whatever that the company then owned it, or that it was then within its grant.   It was nothing but a mere promise to sell the land, and to cause him who should be the owner five years thereafter to convey the title to the purchaser.   It goes without saying that an action for false and fraudulent representations can never be maintained upon a promise or a prophecy.   Kerr, Fraud & M. p. 85, note 3; Sawyer v. Pritchett, 19 Wall. 146, 163.   Nor does the fact that the company made a deed of this land without covenants, and therein referred to its grant as the source of its title, furnish any sound basis for such an action, where, as in this case, the grantor was acting in good faith under claim and color of title, and in the honest belief that it had derived a good title from the source it referred to, and that it was conveying such a title to its grantee. Such an action requires for its foundation a false statement knowingly made, or a false statement made in ignorance of, and in reckless disregard of, its truth or falsity, and of the consequences such a statement may entail.   The evil intent—the intent to deceive —is the basis of the action.   Such an intent, it is true, may be inferred from the positive statement as of his own knowledge of a fact concerning which one knows he has no knowledge at all, because such a statement shows such a contempt for the truth, and such a reckless disregard of the rights of others who may rely upon it, that it is deemed sufficient evidence of an evil intent to warrant a recovery when damages have resulted from the falsehood.   The record in this case is barren of any such statements or representations, and the proof is plenary that the company was acting under color of title, and in the utmost good faith.   It will not do to say that whenever a title to land fails an action for false representations will lie against every grantor who has made a deed of the land, and recited therein the source of his title, which appeared to be, and which he then believed to be, good.   Neither an agreement to sell land, and to cause a good title thereto to be conveyed to the purchaser at a future time, nor a deed without covenants which recites the supposed source of the grantor's title, and purports to grant and convey the land, is sufficient to support an action against the vendor for false and fraudulent representations as to his title where he makes the agreement and deed in good faith, under color and claim of title, in the honest belief that the title and its source are good, although in fact they are both invalid.   Nor can this action be maintained as one for money had and received.   Chancellor Kent said in Abbott v. Allen, 2 Johns. Ch. 519, 522, in the year 1817, that it was the settled law that, "if there be no fraud, and no covenants taken to secure the title, the purchaser has no remedy for his money, even on a failure of title," and cited Frost v. Raymond, 2 Caines, 188, 192, in support of this proposition.   The law he then announced has been steadily reaffirmed by the subsequent decisions, and it is fatal to this action.   The rule caveat emptor governs purchasers of land as well as of personal property.   The vendee must

take care that the title he buys is sound. If he has any doubt concerning it, he may require covenants to secure the title as a condition of his purchase. If he makes no such requirement, he takes the risk of the title upon himself, in the absence of fraud, and cannot hold the vendor responsible for its failure. Patton v. Taylor, 7 How. 133, 159; Van Rensselaer v. Kearney, 11 How. 297, 322; Noonan v. Lee, 2 Black, 499, 508; Peters v. Bowman, 98 U. S. 56, 60. Moreover, if the vendee here could ever have maintained an action for money had and received, that cause of action manifestly accrued to him in 1881, when he paid his money, and obtained his worthless deed; and it was barred by the statute of limitations of the state of Colorado in 1887, and at least three years before this action was commenced. 2 Mills' Ann. St. Colo. § 2900. This action was not commenced until June 3, 1891. The judgment below must be reversed, and the cause remanded, with directions to grant a new trial; and it is so ordered.