## KIMBER v. YOUNG.

(Circuit Court of Appeals, Eighth Circuit.    April 19, 1905.)

### No. 2,096.

**1. DECEIT—BREACH OF WARRANTY—ACTIONS—JOINDER.**

A complaint joining a cause of action for breach of warranty in the sale of certain bonds with a cause of action for deceit growing out of and only presenting different phases of the same transaction, and both tending to support a single recovery, was not demurrable for misjoinder of causes of action.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Action, § 471.]

**2. SAME—FRAUD—KNOWLEDGE.**

In an action for deceit, either knowledge on the part of defendant of the falsity of the alleged representations or what in law is equivalent thereto must be averred and proved.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Fraud, §§ 3–5.]

**3. SAME—FALSE STATEMENTS—MATTERS OF OPINION.**

In an action for deceit in the sale of corporate bonds, allegations that defendant knew the bonds to be good, and that they would be paid, principal and interest, at maturity, though stated positively as a fact, were mere matters of opinion, the falsity of which was insufficient to create a liability.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Fraud, §§ 12, 13.]

**4. SAME—MATERIALITY.**

Where, in an action for deceit inducing a purchase of certain bonds, the complaint admitted that the bonds were actually executed and issued by the corporation, an alleged representation that the provisions and recitals of the bonds must be met whether the corporation would or no, was but an assertion that payment of the bonds and performance of other stipulations appearing thereon were not merely optional with the company, but existed as a legal obligation, and was insufficient to sustain the action.

**5. SAME.**

Where a complaint for deceit charged that defendant, who was president of a corporation, in order to induce plaintiff to accept certain bonds as part consideration for the purchase of property, represented that others had agreed to accept some of the bonds in part payment of property sold to the corporation, that the bonds offered to plaintiff would come in before those held by defendant and his associates, and that as to such bonds plaintiff would occupy a preferred place among the bondholders, which representations were false, and there was no reference in the complaint to any recitals in the bonds which would impugn plaintiff's averment that, aside from defendant's representations, she was wholly without knowledge or means of acquiring the same with reference to the truth of the facts, such representations were material, and as to them the complaint stated a cause of action.

**6. SAME—WARRANTY.**

Where a count in a complaint for breach of warranty in the sale of certain bonds alleged that defendant warranted the validity of the bonds, and that the warranty was false, but other averments disclosed that there was no real contention that the bonds were not executed by the corporation, and did not constitute valid obligations, such count was demurrable.

Lochren, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

Virginia Kimber sued Frank C. Young to recover damages alleged to have been caused by his deceit and breach of warranty in respect of certain corporate bonds purchased by her. A demurrer directed to her amended complaint, which was in two counts, was sustained by the circuit court. She elected to stand upon her pleading, and judgment was accordingly rendered that she take nothing by her action. This writ of error is to review the judgment.

The first count contained the charge of deceit, and it consisted of the following averments: The plaintiff, the owner of certain mining interests, contracted to sell and convey them to the defendant, or, at his request, to a mining and milling company of which he was president and a director, for a cash consideration of $162,500. Some time afterwards, and before the sale was consummated, the company executed a series of 6 per cent. bonds aggregating $750,000, and maturing in 10 equal annual installments. When defendant came to close the transaction with the plaintiff, he prevailed upon her to accept for her property $125,500 in cash and $37,000, the remainder of the purchase price, in bonds of that amount, which were a part of the first maturing installment of the series mentioned. To induce her to accept the bonds in lieu of cash, which she was entitled to under the contract of sale, the defendant represented to her in writing that other persons who had sold mining property to the company had agreed to accept such bonds in part payment; that the bond issue was all in the hands of the trust company; that the provisions and recitals of the bonds must be met whether the company would or no; that the bonds offered to her were due absolutely July 1, 1901, and would come in before those held by defendant and his associates; that she might depend upon being honorably dealt with, and upon the interest coupons being promptly met; that he (the defendant) knew the bonds offered her to be good, and that as to said bonds she would occupy a preferred place among the bondholders. With like purpose he also represented to her son, who was her agent, that the bonds "were first-class securities, good in all respects, and that he knew the same would be paid, principal and interest, at the maturity thereof." When these representations were made, the defendant was president of the company which issued the bonds, was largely interested in and wholly conversant with its affairs and condition, and knew that she would rely upon and be governed by what he said. She was ignorant and had no means of acquiring knowledge of the value and character of the bonds other than through his representations,

as he well knew. She had been acquainted with him for many years, and, he being a broker, she had from time to time employed him to invest her funds, and therefrom arose a relation of trust and confidence which had long existed between them. Under these circumstances she relied upon what he said concerning the bonds offered her, and in such reliance delivered the conveyances of her mining interests to the defendant for his company, and accepted, in payment $125,500 in cash and the bonds to the amount of $37,000. The representations of the defendant proved to be wholly false and without foundation. Default was made in her bonds at maturity. She sued the mining company, the maker thereof, and her action was defeated through the efforts of defendant. The bonds were worthless, and, had been so long before their maturity, and in view of the premises she had been damaged in the sum of $37,000.

The second count of the complaint was based upon the same transaction, and was for breach of a warranty as expressed in these paragraphs:

"That at the said time and to induce this plaintiff to accept the said bonds in place of said sum of $37,000 the said defendant then and there in writing expressly affirmed their regularity and validity to this plaintiff, and did assure her in writing that he, the said defendant, knew them, and each of them, to be good, whereby and by means whereof the said defendant represented and warranted the said bonds to this plaintiff, and that the same would, by reason thereof, be paid principal and interest at the maturity thereof, and the plaintiff, relying wholly upon said representations, assurances, and warranties of said defendant, did accept and was induced to accept the said bonds as aforesaid for and in place of the said sum of money, and deliver her conveyances of said mining claims and premises to said company.

"The plaintiff, further complaining, alleges that said representations and warranty of said plaintiff to this defendant that said bonds were good and valid and that same would be paid as aforesaid, were wholly false; that the said warranty has been broken and disregarded, in consequence whereof the said plaintiff has suffered great damage and injury, to wit, the face or pretended value of said bonds being the just and full sum of thirty-seven thousand dollars ($37,000)."

In addition to the charge of a breach of warranty this count also contained averments found in the first count, and tending to give it the character of a cause of action for deceit. They may be disregarded, however, because counsel for both parties have treated the first count as containing a cause of action for deceit and the second as setting forth merely a cause of action for a defaulted warranty; and we shall so consider them.

Charles S. Thomas (Wm. H. Bryant, Harry H. Lee, and Wm. P. Malburn, on the brief), for plaintiff in error.

Charles R. Bell (Daniel Sayer, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and LOCHREN, District Judge.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Eight grounds were assigned in defendant's demurrer, but, so far as they need be considered, they present but three questions: Was there an improper joinder of causes of action in the same complaint? Did the first count state a cause of action for deceit? Did the second count state a cause of action for breach of warranty?

There was no misjoinder of the causes of action. The existence of one was entirely compatible with the existence of the other. They grew out of and presented but different phases of the same transaction, and both tended to support a single recovery. It is

contended that the count for breach of warranty is upon contract, and therefore could not be united with one for deceit which is ex delicto. But an action for breach of warranty may be either in contract or in tort, at the pleasure of the pleader. Schuchardt v. Allens, 1 Wall. 359, 368, 17 L. Ed. 642; Shippen v. Bowen, 122 U. S. 575, 581, 7 Sup. Ct. 1283, 30 L. Ed. 1172. In fact, the ancient remedy was an action in tort, and the practice of declaring in assumpsit was an expedient afterwards adopted for the purpose of enabling the plaintiff to join the money counts with those upon the warranty. Williamson v. Allison, 2 East, 451. Under the modern system of pleading the actual facts constituting a cause of action are narrated, and, as a consequence, the line of distinction between tort and contract is frequently so shadowy and uncertain that it is difficult to determine to which class an action belongs. The proper construction in such cases is that which makes the complaint or declaration, as a whole, maintainable, and the different counts consonant with each other. It is well settled that, when they grow out of the same transaction, an action for deceit and an action on the case for breach of warranty may be joined. Shippen v. Bowen, supra; Dushane v. Benedict, 120 U. S. 630, 7 Sup. Ct. 696, 30 L. Ed. 810; Schuchardt v. Allens, supra; Bliss on Code Pleading, § 120. The joinder was permissible under the Colorado Code. Mills' Ann. Code, § 70.

To afford sufficient basis for an action of deceit the representation must have been of material facts, and must have had such relation to the transaction in hand as to operate as an inducement to the action or omission of the complaining party (Slaughter's Adm'r v. Gerson, 13 Wall. 379, 383, 20 L. Ed. 627; Smith v. Chadwick, 20 Ch. D. 27); and it must have been relied on by him (Marshall v. Hubbard, 117 U. S. 415, 6 Sup. Ct. 806, 29 L. Ed. 919; Ming v. Woolfolk, 116 U. S. 599, 6 Sup. Ct. 489, 29 L. Ed. 740; Stratton's Independence v. Dines [C. C.] 126 Fed. 968, 977). The basis of the action of deceit is the actual fraud of defendant—his moral delinquency; and therefore his knowledge of the falsity of the representation, or that which in law is equivalent thereto, must be averred and proved. There is much confusion in the authorities upon this subject, due in part to the erroneous assumption that that which is merely evidence of fraud is equivalent to the ultimate fact which it tends to prove, and also to the assumption, likewise erroneous, that an untrue representation which would be sufficient to support a suit in equity for a rescission of a contract is equally as available in an action of deceit. In Derry v. Peek, 14 App. Cas. 337, 356, a well-reasoned case, Lord Fitzgerald said:

"The action for deceit at common law is founded on fraud. It is essential to the action that moral fraud should be established, and since the case of Collins v. Evans, 5 Q. B. 804, 820, in the Exchequer Chamber, it has never been doubted that fraud must concur with the false statement to maintain the action. It would not be sufficient to show that a false representation had been made. It must further be established that the defendant knew at the time of making it that the representation was untrue, or, to adopt the language of the learned editors of the Leading Cases, that 'the defendant must be shown to have been actually and fraudulently cognizant of the false-

hood of his representation, or to have made it fraudulently without belief that it was true.' "

In the same case Lord Herschell said:

"I think the authorities establish the following propositions: First, in order to sustain an action of deceit there must be a proof of fraud, and nothing short of that will suffice; secondly, fraud is proved when it is shown that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false."

In Lord v. Goddard, 13 How. 198, 211, 14 L. Ed. 111, it was said:

"The gist of the action is fraud in the defendants and damage to the plaintiff. Fraud means an intention to deceive. If there was not such intention; if the party honestly stated his opinion, believing at the time that he stated the truth—he is not liable in this form of action, although the representation turned out to be entirely untrue. Since the decision in Haycroft v. Creasy, 2 East, made in 1801, the question has been settled to this effect in England. The Supreme Court of New York held likewise in Young v. Covell, 8 Johns, 23, 5 Am. Dec. 316. That court declared it to be well settled that this action could not be sustained without proving actual fraud in the defendant, or an intention to deceive the plaintiff by false representations. The simple fact of making representations which turn out not to be true, unconnected with a fraudulent design, is 'not sufficient. This decision was made forty years ago, and stands uncontradicted, so far as we know, in the American courts."

This court has said that an action of deceit "requires for its foundation a false statement, knowingly made, or a false statement made in ignorance of, and in reckless disregard of, its truth or falsity, and of the consequences such a statement may entail. The evil intent—the intent to deceive—is the basis of the action." Union Pac. Ry. Co. v. Barnes, 64 Fed. 80, 12 C. C. A. 48.

In Hindman v. Bank, 112 Fed. 931, 945, 50 C. C. A. 623, 636, 57 L. R. A. 108, Judge Lurton said:

"Before the plaintiff can recover in an action of deceit, he must prove two things: that the representation was false, and that the person making it knew it was false. * * * Such an action differs essentially from one brought for rescission of a contract on the ground of misrepresentation. In the latter kind of suit it is immaterial whether the representation was made dishonestly or not. If the contract was obtained by misrepresentation, however honestly made, it cannot stand. But when the action is for fraud and deceit, it is not enough to show that the representation was untrue; for, if it was honestly believed to be true, that is a good defense. Derry v. Peek. 14 App. Cas. 337. But a representation recklessly made, without knowledge of its truth, could not be a statement honestly believed."

A false statement recklessly made, without knowledge of its truth or falsity, is the equivalent of actual fraud. It is a false statement knowingly made, within the settled rule. Cooper v. Schlesinger, 111 U. S. 148, 155, 4 Sup. Ct. 360, 28 L. Ed. 382; Smith v. Richards, 13 Pet. 26, 38, 10 L. Ed. 42; Lynch v. Trust Co. (C. C.) 18 Fed. 486. As Mr. Justice Story observed:

"The affirmation of what one does not know, or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false." Story, Eq. Juris. § 193.

The false representation relied on as the ground of an action of deceit must have accomplished the purpose of deception. Ming v. Woolfolk, supra. The plaintiff must have used due diligence to

discover for himself the truth or falsity of the representation (Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203), or the relations of the parties to each other or the location or character of the subject-matter of the transaction must have been such as to excuse investigation and to justify his reliance upon the assertion of the other. Again, the representation must be of existing and ascertainable facts, and not mere promissory statements based upon general knowledge, information, and judgment. Sawyer v. Prickett, 19 Wall. 146, 22 L. Ed. 105; Patent Title Co. v. Stratton (C. C.) 89 Fed. 174, 178. It was said in Union Pacific Ry. Co. v. Barnes, supra: "An action for false and fraudulent representations can never be maintained upon a promise or a prophecy." Nor is mere expression of opinion sufficient, though it be false, and be expressed in strong and positive language. Johansson v. Stephanson, 154 U. S. 625, 14 Sup. Ct. 1180, 23 L. Ed. 1009. Positive statements as to value are generally mere expressions of opinion and as such cannot support an action of deceit. Gordon v. Butler, 105 U. S. 553, 26 L. Ed. 1166; Blease v. Garlington, 92 U. S. 1, 9, 23 L. Ed. 521.

In Haycroft v. Creasy, 2 East, 92, the words complained of were, "I can positively assure you of my own knowledge that you may credit Miss R. to any amount with perfect safety." They were held not to be actionable, though it turned out that Miss R. was an impostor, who had succeeded in deluding many persons by false pretensions to wealth. It was observed that the use of the word "knowledge" by the defendant was merely an emphatic statement of his opinion concerning a matter which was peculiarly the subject of judgment or opinion, rather than of accurate knowledge; and reliance was also placed upon the absence of an affirmative showing of intentional fraud.

In Deming v. Darling, 148 Mass. 504, 20 N. E. 107, 2 L. R. A. 743, the representation that a certain railroad bond "was of the very best and safest and was an A No. 1 bond" was held a mere expression of opinion of value, and that it was not actionable, even though made in bad faith.

In Kimball v. Bangs, 144 Mass. 321, 11 N. E. 113, it was said:

"The law recognizes the fact that men will naturally overstate the value and qualities of the articles which they have to sell. All men know this, and a buyer has no right to rely upon such statement."

In Belcher v. Costello, 122 Mass. 189, the representation was that certain notes taken by plaintiff as collateral security were good. It was held that it was not the statement of a fact, but the expression of an opinion merely, and that the trial court erred in submitting to the jury the question whether it was intended by defendant to represent that the makers of the notes were in good pecuniary circumstances, and able to pay them, and in saying that, if they so found, the representation would be as to an existing fact.

In Ellis v. Andrews, 56 N. Y. 83, 15 Am. Rep. 379, it was held that a false representation that certain corporate stock which was sold was worth at least 80 per cent. of the par value thereof was not actionable.

In Warner v. Benjamin, 89 Wis. 290, 62 N. W. 179, which was an action for damages for fraudulently inducing the plaintiff to purchase worthless mining stocks, it was held that representations by the defendant that the plaintiff could not lose upon her investment, and that the mines would pay dividends in the near future, were mere expressions of opinion, and of a promissory character, and did not afford a ground for recovery.

Reading the complaint in the light of these principles, what do we find? There is no direct charge that the defendant was actuated by fraud or evil motive; that he knew that his representations were false; that he made them for the purpose of deceiving the plaintiff; or that he made them recklessly, neither knowing of their truth or falsity, nor caring. In the absence of such averment or the equivalent, it is obvious that an essential element in an action of deceit would be lacking. It appears from the complaint, however, that defendant was the president and a director of the company that issued the bonds, and that he was wholly conversant with its affairs and condition; and it may therefore properly be said that a false statement by him as to such matters, being neither of mere opinion or judgment nor a prediction as to the future, was a false statement knowingly made within the rule. But it is entirely clear that this implication of scienter arising from defendant's official connection with his company and his knowledge of its affairs applies only to existent facts, and does not, as matter of law, reach and cover the question of good faith in the expression of his opinion as to the worth of its securities were it material to be considered. The defendant's knowledge of the affairs of the company and his opinion predicated thereon are things wholly different. Actual conditions have but an evidential bearing upon the question of sincerity with which one's opinion is entertained. Error in the finite judgment of man must always be expected. Account must be taken of imperfect appreciation of those things which lie before the eyes, and sanguine hopefulness, and even credulity; all of which may be entirely consistent with the utmost good faith. So far, therefore, as the words of the defendant were mere expressions of his belief, the case has not even been brought within the doctrine of those cases which declare to be actionable an intentionally false statement of opinion. The charge in a pleading of an erroneous opinion based upon known conditions is not a charge of intentional bad faith, fraud, or deceit.

The statement of the defendant that the bonds offered to the plaintiff were first-class securities, that he knew them to be good, and knew that they would be paid, principal and interest, at maturity, was a mere expression of his judgment or opinion as to their value, and a prophecy as to the financial prosperity of his company. It is true that the words of the defendant were positive and emphatic, but, after all, they were only expressions of his belief. From the very nature of things, he could not have looked into the future, and foretold with certainty the successful conduct of the business; and, so far as the worth of the bonds depended upon the value of the property of the company, part of which was purchased of the

plaintiff herself, it is common knowledge that it might naturally be susceptible of the widest difference of estimate. Enterprises such as that behind the bonds in question not infrequently disappoint the anticipations of their projectors, and statements like those made by defendant should be taken not as representations of existing facts, but rather as expressions of expectancy and opinion.

It is not perceived how the representation that "the bond issue was all in the hands of the trust company" was material, how the falsity of the statement operated to the prejudice of the plaintiff, or was matter of inducement to her acceptance of the bonds sold to her.

The representation that the provisions and recitals of the bonds must be met whether the company would or no, is but an assertion that the payment of the bonds and the performance of such other stipulations as appeared thereon were not merely optional with the company, but existed as a legal obligation. As it was admitted in the first count of the complaint that the bonds were actually executed and issued by the company, there is nothing substantial in this averment. Another representation which is said to have been false was "that the bonds offered to this plaintiff were due absolutely July 1, 1901." Were nothing else to be said as to this, it appears elsewhere in the same count that the bonds matured on the day mentioned.

It was also charged that defendant represented that other persons had agreed to accept some of the bonds in part payment of mining property sold by them to the company; that the bonds offered to the plaintiff would come in before those held by defendant and his associates, and that as to such bonds she would occupy a preferred place among the bondholders. These representations were material, and were well calculated to induce the plaintiff to accept the bonds. There is no reference in the complaint to any recitals of the bonds themselves which would impugn her averment that, aside from the representations of defendant, she was wholly without knowledge or means of acquiring the same. In respect of these representations a cause of action is stated in the first count of the complaint, and the demurrer thereto should have been overruled. But it should be said that if, upon the trial, it is found that the alleged representation of priority of the plaintiff's bonds was merely that they would be paid at maturity, and would therefore be out of the way before those of succeeding installments would mature—a priority in time of payment, rather than of lien or obligation—it would be merely promissory in character and not actionable.

In an action of false warranty it is not necessary to allege or prove the scienter of the defendant, and in that respect it differs from an action of deceit. But the rule that applies to the latter, excluding from the class of actionable representations those which are purely expressions of opinion or belief or which are of a promissory character applies as well to an action of false warranty.

From the face of the two paragraphs of the second count which appear in the statement preceding this opinion there may arise an

inference that the plaintiff charged that defendant warranted the validity of the bonds, and that the warranty was false. But in view of the other averments, and what was said at the argument and in the briefs, there is no real contention that the bonds were not genuine, were not actually executed by the company, and did not constitute valid obligations. The demurrer to the second count was properly sustained.

.The judgment of the Circuit Court is reversed, and the cause remanded, with directions to overrule the demurrer to the first count of the complaint, and to permit the defendant to answer.

LOCHREN, District Judge (dissenting). I concur fully in the foregoing opinion excepting the conclusion that in respect to the alleged representations of the defendant "that other persons had agreed to accept some of the bonds in part payment of mining property sold by them to the company, that the bonds offered to the plaintiff would come in before those held by defendant and his associates, and that as to such bonds she would occupy a preferred place among the bondholders," in the first count of the complaint, in connection with the general averment that all representations made by the defendant were false, states a cause of action. That count sets forth very many distinct representations, as made by the defendant, followed by the sweeping general allegation "that the said statements, assurances, representations, and inducements of said defendant were and are wholly false, ungrounded, and without foundation." There is no averment as to what the facts really were, and this is but an averment of a bare naked conclusion. The office of a pleading is to state facts that the other party may be advised of what the claim he is called upon to meet is based upon. In this very count of this complaint many of these representations of defendant so in general terms alleged to be false are shown by the facts stated in the same count to have been true; others are mere statements of opinion or prophecy. In respect to the particular allegations above quoted, there is no averment that other persons had not agreed to accept some of the bonds in part payment for mining property sold by them to the company; and as that count of the complaint shows that the company's issue of $750,000 of bonds was to mature at the rate of $75,000 per year for ten years, the $37,000 of bonds received by plaintiff maturing July 1, 1901, were of the second lot to mature, and would in fact "come in" before the installments coming due during the eight succeeding years, and plaintiff would occupy a preferential place; hence that portion of this representation also appears to have been true. But the fault of the pleading is that it states no facts to support its charge of falsehood and fraud. To aver that a representation is false or fraudulent, without stating the actual facts, is insufficient. Specht v. Allen, 12 Or. 117, 122, 6 Pac. 494. The true rule applicable to such a pleading is tersely stated by Judge Hook in Williamson v. Beardsley, 137 Fed. 467 (just filed), as follows: "There was, however, an entire absence of averment of substantive facts justifying the charge of fraud, and in such a case the mere use by the pleader of

the terms 'fraudulent' and 'fraudulently' signifies nothing." Precisely so in respect to the terms "false" and "falsely." I think the demurrer was properly sustained.