A T

### DES MOINES, OCTOBER TERM, A, D, 1888,

IN THE FORTY-SECOND YEAR OF THE STATE.

---

PRESENT:

HON. WILLIAM H. SEEVERS, CHIEF JUSTICE.
HON. JOSEPH R. REED,
HON. JAMES H. ROTHROCK, } JUSTICES.
HON. JOSEPH M. BECK,
HON. GIFFORD S. ROBINSON,

---

KING v. THE SIOUX CITY LOAN & INVESTMENT CO.

**Fraud:** IN NEGOTIATING MORTGAGE: FALSE REPRESENTATIONS AS TO
VALUE OF LAND. The defendant company was engaged in the
business of taking real-estate mortgages and negotiating them
to such persons as had money to loan. W. made an appli-
cation to defendant for a loan, in which it was recited
that defendant was acting as· plaintiff's agent. The loan
was made,—the notes and mortgage running to the defend-
ant, which assigned them without recourse to the plain-
tiff. In the application, which was sworn to by·W., the land was
represented to be worth thirty dollars per acre, whereas it was

( 11 )·

ᴜrth not to exceed five dollars. W. and defendant's secretary, who did the business, knew that the land was not worth thirty dollars per acre, but agreed that it should be so stated in the application on the ground that it would be worth that amount when the loan matured. It was in reliance upon this application that plaintiff accepted the securities and paid his money for them. In this action, he tenders back the securities and demands judgment for the money. *Held* that, upon proof of the facts stated, it was error for the court to direct a verdict for defendant; but that the defendant should have been required to introduce its evidence, and the question of fraud should have been submitted to the jury.

*Appeal from Woodbury District Court.*—Hon. George W. Wakefield, Judge.

Filed, October 24, 1888.

The defendant is a corporation engaged in loaning money on real-estate security, and negotiating loans, buying and selling lands, investing in real estate, and receiving funds in trust, and investing the same. In June, 1885, the defendant made a loan of eight hundred dollars to one Wellman, and took from him, as security for the loan, a mortgage upon eighty acres of land in Woodbury county. Wellman made a written application to the defendant for the loan. The defendant took the mortgage and interest coupons in its own name, and assigned the same without recourse to the plaintiff. The plaintiff claims in his petition, and in an amendment thereto, that the defendant, for the purpose of inducing the plaintiff to take said loan, falsely and fraudulently represented to plaintiff that said land was of the value of thirty dollars per acre, when in fact it was not worth to exceed five dollars per acre, as defendant well knew; and made other false and fraudulent representations and concealments with reference to the character and condition of said land and the improvements thereon, by all of which the plaintiff was induced to take said loan, to his great prejudice. The plaintiff tendered back said mortgage, notes and coupons, and demanded the return of his money; and this action was brought to recover back the money paid by the plaintiff to the defendant. Said Wellman was also made a party

defendant, but he made no answer in the case. There was a trial by jury. At the close of plaintiff's evidence the defendant made a motion for an instruction directing the jury to find a verdict for the defendant, which motion was sustained, and a verdict and judgment were rendered accordingly. Plaintiff appeals.

*John N. Weaver* and *Lutz & Sears*, for appellant.

*Lawrence & Burd* and *Hubbard, Spalding & Taylor*, for appellee.

ROTHROCK, J.—The question presented by this appeal is whether the evidence introduced by the plaintiff was sufficient to warrant a jury in finding a verdict for him. In other words, was there such a want of evidence of fraud, practiced by the defendant, as to authorize the court to interfere, and direct the jury to find a verdict for the defendant? It appears from the evidence that one A. W. Bronson was, at the time of the transaction complained of, the secretary and general manager of the defendant company. The plaintiff was seeking the investment of his money, and had taken some mortgage loans of the defendant. Wellman made a written application to Bronson for the loan. Upon its face this application is in due form; all of the answers to questions appear to be fairly and honestly made; and Wellman, who made answers to the questions, was duly sworn to the application by said Bronson, who was a notary public. One of the questions, and the answer thereto, in the application, is as follows: "What is the cash value of the land per acre? A. Thirty dollars." All of the other questions and answers as to the improvements, the number of acres in cultivation, etc., indicate that the farm was a desirable tract of land, and that it was first-class security for a loan of eight hundred dollars. The evidence tended to show that the plaintiff took the loan upon the faith of this application, and the representation of the vice-president of the defendant company that the land was good land;

and the plaintiff testified, as a witness, that he took the loan on the representation that it was good land, and upon the application. It is quite plain that any general representation made by the vice-president as to the land being good land would not, under well-established rules of law, amount to a fraud; for there is no evidence that the vice-president knew that the application was a fraud, and his representation as to the quality of the land was a mere general commendation of quality, which is regarded as matter of opinion, and not the fraudulent representation of a fact. The evidence shows that the land was of the value of from two to three dollars per acre. Now, if Bronson, the general manager of the company, took this application in good faith, and did not know that the answers to the questions therein were untrue, the ruling of the court in taking the case from the jury was undoubtedly correct. But there was evidence tending at least to show that he knew that the answers were not true.

Wellman, who made the application for the loan, was a witness upon the trial for the plaintiff. He testified in his examination in chief to the value of the land as follows: "I think Bronson inquired how we would appraise the land; and, as I applied for an eight hundred dollar loan, and wanted that much on the land, it had to be appraised at about thirty dollars an acre. He told me, and we talked the matter over, and they wanted to know what it would be worth at the expiration of the loan. I told them I supposed it would be worth as much as land in eastern Iowa now is in five years. He said that was a good way to appraise it. Thirty dollars an acre was put in the application as an estimate of what the land would be worth in five years from that time. Mr. Bronson had my word at that time as to what this land had actually cost. He might have had other information. I explained to Mr. Bronson that my brother and I were in partnership, and that he (my brother) held the title; but I had purchased this land of my brother, and had to make this loan to pay for it. I told Bronson my brother had paid four

hundred and fifty dollars for the bond for a deed to this land. Don't think anything further was said on the value of the land. I could't find appraisers at the time, —no one in the city that I was acquainted with. Think Bronson said they would appraise land themselves, or get appraisers, or one appraiser, at least." In his cross-examination he testified as follows: "I did not state to him the land was worth thirty dollars. They asked what the land would be worth in five years. I said it ought to be worth as much as land in eastern Iowa is now. I made no statement as to the value of the land. They wanted to know what land was worth in eastern Iowa, and I said thirty dollars per acre. I made no statement at time of making this application as to value of the land at that time. I supposed the land was to be appraised at its value five years from time of making the loan. That was what we talked. I gave them thirty dollars per acre, or the value five years from now." Now, it is true that representations as to the value of property cannot ordinarily be made the basis for the recovery of damages for fraud and deceit. This is the general rule. *Bell v. Byerson*, 11 Iowa, 233; *Longshore v. Jack*, 30 Iowa, 298; *Dawson v. Graham*, 48 Iowa, 378; *Hoffman v. Wilhelm*, 68 Iowa, 510. But the evidence shows that there was not a mere sale of the mortgage and notes by the defendant to the plaintiff; that is, it was the business, in part, of the defendant, to make these loans, take the securities, and negotiate them to persons like the plaintiff, who had money to invest. The application for this loan recites that the defendant is the agent of Wellman to procure the loan from some other person, persons or corporation. This business is well understood by the public, and reliance is placed by investors upon these applications; and, as long as these loan agencies act in good faith, investors ought not to complain if the security sometimes is inadequate, and loss results. But these applications, and sworn answers to questions, and appraisements of the property, are made for the very purpose of putting into the hands of investors reliable information as to the

value of the security for the money loaned.  If it were known to be the fact that these papers are prepared as Wellman testifies this application was made, loan agencies might as well cease to do business, because the public could place no confidence in them.  It must be understood that we do not determine whether Wellman told the truth in his sworn application for the loan or in his testimony as a witness.  That was a question for the jury, and not for this court, nor the district court, to determine.  By his testimony given upon the trial, he confessed, in effect, that he and the general manager of the company were both parties to a scheme to defraud whoever might be induced to place reliance upon this written application.  It was more than a mere general declaration of the value of the property, based upon the opinion of either Wellman or the general manager. It was the deliberate preparation of a statement for the information of persons seeking to invest money, and upon which they were invited to rely without an examination of the land.  We think that the defendant should have been required to introduce its evidence, and the jury should have been permitted to pass upon the question of fraud.

REVERSED.