120　191
135　684

120　191
136　228

S. H. BROWN, Appellant, v. VESTA V. HOLDEN, Appellee, GEORGE A. ALLEE *et al.*, Appellants.

Mortgages: FORECLOSURE: CHANGE OF VENUE. Where action is
1　brought by the assignee of a real estate mortgage to foreclose the same, and the defendant by a cross-petition against the original mortgagees and others claims damages for fraudulent representations inducing the execution of the mortgage, in case a cancellation of the same is not decreed, the defendants in the cross-petition are not entitled to a change of venue to the respective counties of their residence.

Evidence: FALSE REPRESENTATIONS. On the issue of fraud in
2　procuring a mortgage given for the difference in value on exchange of properties, the evidence is examined and held to show that the execution of the mortgage was induced by the fraudulent representations of the mortgagees and their agent, who was also secretly acting as the agent of the mortgagor.

Sale of Mortgage: BONA FIDE PURCHASER: EVIDENCE. Where one
3　purchases a mortgage, even for value and before due but with a knowledge that the maker claims a defense which has not been waived or satisfied, he does so at his peril, and this is true though the purchase is through an agent having such knowledge. Evidence considered and held to bring the case within the rule.

*Appeal from Decatur District Court.*—HON. H. M. TOWNER, Judge.

SATURDAY, APRIL 11, 1903.

IN June, 1898, the defendant Holden lived at Fairview, in Jones county, and there owned an acre of ground, on which was a store building. She carried on business in the store, and had therein a small stock of general merchandise. At the same time G. A. Allee and J. W. Allee, living at Belle Plaine, Benton county, were the owners of a farm, consisting of one hundred and twenty acres, in Decatur county. About the time stated said parties

entered into a contract in writing for the exchange of
their respective properties.   The material provisions of
such contract are as follows:   The parties agree to ex-
change properties, subject to the inspection of the farm by
Mrs. Holden.   If exchange is made, the farm, including
share of crops, is to be valued at $4,800, the store building
and ground at $2,000, and the stock to be invoiced at
wholesale cost; Mrs. Holden to give mortgage back on the
land for balance, the same to become due in one year,
with six per cent. interest; the deal to be closed within
four weeks if Mrs. Holden is satisfied with the farm.   In
the contract the farm is said to be about one and one-
fourth miles from Van Wert, and is represented as "about
sixty-five acres in cultivation, the balance meadow and
pasture; land is rolling; a new five-room house; two wells;
board stable and other outbuildings; all the land can be
cultivated except about twelve acres in timber and pas-
ture; good black soil, not stony and sand."   It is further
provided that Allee is to go with Mrs. Holden and show
her the farm when she is ready to go.   Within a few days
after the making of such contract, Mrs. Holden and J. W.
Allee went to Decatur county, and drove out to the farm.
Upon their return an invoice was made of the goods owned
by Mrs Holden; the value thereof, as shown by such in-
voice, being fixed at $830.   Thereupon an exchange was
effected by proper instruments in writing, and there was
executed by Mrs. Holden to G. A. Allee, on account of the
difference in values and to cover an item of indebtedness
due from her on goods in the store which was assumed and
agreed to be paid by Allee, a note for $2,200, and mort-
gage to secure the same upon the farm in question.   It is
alleged that such note and mortgage were subsequently,
and before due, assigned for value to the plaintiff, S. H.
Brown, and this action is brought by him to recover
thereon.   In her answer the defendant Holden admits the
execution of the note and mortgage, but alleges that the

same was procured by fraud and false representations; that the same was and is without consideration and void. She denies that plaintiff became the owner of said note and mortgage before maturity thereof; denies that he is the owner thereof, or that he ever paid anything therefor; and alleges that he (said plaintiff) was a party to the fraud of which she complains. She further alleges that defendants Allee have disposed of the property obtained from her, so that rescission cannot be had. She therefore prays that the note and mortgage in suit be declared null and void, that the same be cancelled, and for general equitable relief.

The defendant also filed a cross-petition, making George A. Allee, J. W. Allee, and O. F. Bates defendants thereto, in which is charged the fraud set forth in her answer, and participated in by them, resulting in her execution of the note and mortgage in question, and praying that whatever relief may be awarded plaintiff as against her may in turn be awarded in her favor as against said cross-petition defendants. The further contentions of the parties, and the facts in the case as far as material, will be found stated in the opinion. There was a decree finding that fraud had been practiced upon the defendant to her damage by the defendant in the cross-petition, and of which plaintiff had knowledge at the time he purchased the note and mortgage in question. It was accordingly ordered that defendant have a credit upon said note as for her damage in the sum of $1,695.19; that plaintiff have judgment against her for $504.81, the balance due on said note and a decree of foreclosure, with the costs thereof. The costs of the trial of this action are taxed to the cross-petition defendants. Plaintiff Brown, and the defendant Allee and Bates each appeal.—*Affirmed.*

*Marion F. Stookey* and *Tom H. Milner* for appellants.

*C. W. Huffman* and *Harvey & Parrish* for appellee.

BISHOP, C. J.—Upon being served with notice, and before answer, the cross-petition defendants, G. A. Allee, J. W. Allee, and C. F. Bates, filed motions for change in the place of trial. The Allees allege that they are residents of Benton county, and they pray a transfer of the action as to them to that county. Bates alleges that he is a resident of Linn county, and prays a transfer as to him to that county. These motions were overruled, and such rulings are made the basis of assignments of error. We think the motions were properly overruled. Section 1. CHANGE of venue. 3493 of the Code requires that an action for the foreclosure of a mortgage of real property shall be brought in the county in which the property to be affected is situated. By section 3574 of the Code it is provided that when a defendant has a cause of action affecting the subject-matter of the main action against a person not a party to the main action, he may file a cross-petition against such other person. The person thus made defendant in such cross-petition shall be notified as in other cases, and defense shall be made at the time and in the manner prescribed in respect of the original petition. The point here contended for as error was expressly made and decided in *Mahaska County Bank v. Crist*, 87 Iowa, 415. In that case it is said: "The statute contemplates a trial of the issues joined on the cross-petition in the court in which the original action is determined. It provides a means of adjudicating in a single action different rights of the defendants and others, which are affe ted by the subject-matter of the litigation which the plaintiff has instituted. The filing of a cross-petition and the proceedings thereunder do not constitute a separate action within the meaning of the statute, and to award a party a separate trial in the court of another county on the ground of his residence therein would be contrary to its spirit and intent."

II. In their several answers to the cross-petition the defendants Allee and Bates deny all the allegations charg-

ing fraud and misrepresentation.   The record is a volum-

2.  EVIDENCE:   inous one, and we cannot undertake in this
   false repre-
   sentations.   opinion  to present even a synopsis of all the
evidence  bearing upon the question thus at issue.   We
content ourselves,  therefore,  with  a  statement of the
ultimate  facts and. our  conclusions drawn from a read-
ing of the whole record.   The  exchange of properties
was brought about through the medium of  the  defendant
Bates, who is a real estate broker living at Cedar Rapids,
Linn county.   The defendants Allee had placed the Deca-
tur county farm in his hands for sale or  trade, and subse-
quently  defendant  Holden,  in  ignorance of such fact,
employed him to negotiate a sale of her property.   Bates
soon notified her that he had a customer, and in a few
days appeared at Fairview in company with defendant J.
W. Allee.    Upon the occasion of this visit the contract in
que tion was drawn up and signed.   A s leading up to the
making of the contract, Mrs. Holden says (and we are
disposed to accept her version as being true) that  Allee
represented the farm as being situated just east of the
town of Van Wert; that it was good black soil; that there
was a fine spring thereon; that about all the land could be
cultivated, there being ten or twelve acres that could not
well be, or  being seeded with timothy, need not be; that
the farm rented for $3 or $3.50 per acre, and was of the
value of $40 per acre.    Such  statement concerning the
value of the land might not be  material  under some cir-
cumstances.    It is the general rule that one may express
an opinion as to property values without incurring liabil-
ity as for false representation.   *Hoffman v.   Wilhelm*, 68
Iowa, 510.    But where the evidence discloses the fraudu-
lent representation of a fact, and not merely an expression
of opinion, the general rule does not apply.   *King v.  The
Sioux City, etc.  Co.*, 76 Iowa, 11.    Here the representa-
tion of value is material to be considered, because, in con-
nection therewith, it is shown that an attempt was made

by Allee to demonstrate that $40 per acre was in fact the value of the land. He presented an abstract of title in proof of an assertion made by him that the property had been previously mortgaged to a loan company for $2,200, and said: "This is proof that the land is worth what we ask for it, as you could not get a loan from any loan company for that amount if it was not worth double or more. One-third the value is what loan companies generally loan on real estate." To this statement Mrs. Holden replied that she did not understand abstracts, and thereupon requested Bates to look it over. The latter examined the instrument, and said to her: "Mrs. Holden, you don't have to look any farther. This is proof positive of the value." A subsequent examination of the abstract revealed the fact that another tract of land was included with the farm in question in the mortgage to the loan company. The evidence above referred to is also material as tending to throw light upon the attitude of defendant Bates in the transaction. That Mrs. Holden understood he was acting solely in her interest is beyond question, and that Allee was advised in this respect is not to be doubted.

After the execution of the contract, Mrs. Holden wrote to a person of prominence at Van Wert, inquiring generally as to the character and value of the lands lying east of the town, and received a favorable response. A few days later Bates wrote a letter to Mrs. Holden in which he congratulates her upon the deal; assures her that he has protected her interest to the last degree, and will continue to do so; gives her directions about going to see the farm, and urges her to go as soon as possible. Within a few days Mrs. Holden and J. W. Allee met and went down to see the farm. When the train reached Van Wert, Allee made some excuse for not getting off, and they went to Weldon, the next station. Here Allee procured a team and they drove to the farm four miles away. In this connection it is shown that the road from Weldon to the farm

passes through a fine farming country.   On the other hand, the road from Van Wert to the farm is rough, and over steep bluffs.   Upon reaching the farm, the buildings were inspected, as well as the land in the immediate vicinity thereof.   Forty acres of the farm lies abutting upon the highway, the remaining eighty acres lying back to the north.   Near the north line of the forty a ridge extends partially across, so that most of the eighty-acre tract is hidden from view, except from the summit of the ridge. Allee and Mrs. Holden drove out to about the center of the forty, and there he stopped the team.   A heavy thunder storm was threatening at the time, and Allee said they had to hurry back to catch the train.   He told her that the land in sight was the poorest part of the farm; that the eighty-acre tract, which they could not see on account of the ridge, was the better land and he would guarantee it. Mrs. Holden says that in view of the coming storm, the frightened team, and his statement of the necessity for haste, she told Allee that if he was sure the rest of the land was better than that forty she would go back.   He assured her that of his own knowledge his statement was true, whereupon he turned the team and drove back.   As they passed the house, Mrs. Holden expressed a desire to stop and inquire of the tenant what rent he was paying, to which Allee responded that they would miss their train if she did so; that he would give her the tenant's name and she could write to him.   When asked for the name afterwards he had forgotten it..   Upon reaching Cedar Rapids on her way home Mrs. Holden was met by Bates, to whom she told her experience, and that she doubted if the farm was worth as much as was being asked for it. He assured her that he would find out, and in a few days went to Fairview and assured her that he had made an investigation and that the farm was well worth $40 per acre.   Thereupon an invoice was made of the stock of goods, and the exchange effected, Mrs. Holden executing

the note and mortgage in suit as a part thereof. Bates received commission from Allee on account of the trade.

Now, it is made to clearly appear that the farm does not lie east of Van Wert, but in substantially the opposite direction; that the eighty-acre tract is very rough, with deep gullies and ravines; that to a considerable extent it is rocky and sandy, and unfit for cultivation; that the whole farm is not worth, at the best, more than $2,700; and that for several years only a nominal sum had been realized in the way of rent, and this by taking a share in whatever crops were raised. After being advised of the true character and value of the farm, Mrs. Holden tendered back a deed thereof to the defendants Allee, and demanded a reconveyance of her property and a return of the note and mortgage here in suit, which was refused. The court below, as we think, rightly found that the exchange of properties was induced by fraud and false representations, in which the Allees and Bates participated; that in the transaction Mrs. Holden relied upon such false representations, and was deceived by such fraud to her damage. We have no need to lengthen this opinion by advancing argument in support of the conclusion thus reached.

III. It is pleaded in a separate count of the answer of the defendants Allee that, subsequent to all the matters hereinbefore referred to, Mrs. Holden commenced an action in equity against them in the district court of Jones county, in which action she alleged in her petition fully and particularly the fraud and false representations here complained of, and prayed for a rescission of the contract in question, and for general equitable relief. To such action the defendants Allee allege that they appeared by their attorney, Tom H. Milner, and fully answered. Further in this connection, they allege that such action was subsequently, and before trial, dismissed without prejudice by Mrs. Holden. Just what was intended by this

pleading we are at a loss to know.    The facts of the pendency and dismissal of such former action are not pleaded as a bar to the cause of action herein set up in the cross-petition.    There is no suggestion that the dismissal of such action was the result of any settlement, or that the same amounted in fact or in law to a settlement, or that by reason thereof Mrs. Holden is now in any manner estopped from asserting her right and cause of action as she has herein done.    As to the defendants Allee, therefore, we need not give the matters so pleaded any farther consideration.    The plaintiff, Brown, does not refer to such former action in his pleadings.

IV.    The note and mortgage in suit are dated June 28, 1898, and by its terms the note is to become due on or before eighteen months after date.    Upon the back of the note is an indorsement without date as follows:  "Pay to S. H. Brown or order, without recourse.  [Signed] Geo. A. Allee."

3. SALE of mortgage; bona fide purchaser: evidence.

Upon the mortgage appears an assignment to plaintiff in proper form, bearing date July 3, 1899, and acknowledged on the same day before Tom H. Milner, notary public. In his reply filed the plaintiff affirms that he purchased said note and mortgage, paying full value therefor, and before maturity; that at the time thereof he had no knowledge or information concerning the matters of fraud and false representation, or other matter of infirmity, or of defense, now asserted by defendant Holden.    That plaintiff is entitled to recover in this action according to the prayer of his petition, if it shall be found that the averments of his reply are true, cannot be the subject of a question.    Conscious of the importance to him of the issue in which he is involved, we now proceed to a consideration thereof.

The record shows without serious contradiction the following additional facts: At the time of the transactions in controversy Brown lived at Belle Plaine, and, at the

time of the trial of this action lived at Clinton, this state. Milner and the Allees also lived at Belle Plaine. When the action to which reference has been made was brought in Jones county, Milner appeared as attorney for the Allees, and filed an anwser. He was familiar, therefore, with the grounds of complaint being made by Mrs. Holden, the principal one of which was that the Decatur county farm was largely waste land, and had but little value. He says that he consulted with the Allees about the case, and saw the papers and documents, letters, etc., connected therewith. In the pleadings in the present case, drawn by him, it is charged that at the time the Jones county case was dismissed it was fully prepared for trial. In view of such facts, we are warranted in assuming that he had advised himself concerning the facts connected with the making of the contract, and in addition thereto, the actual facts concerning the farm and its true value. Such, at least, would be a natural and proper incident to the preparation of such a case for trial. Accordingly, he had then learned that a large portion of the farm was very rough, and of such a character as to be practically uncultivatable; that in part it was stony and sandy, etc. He also was advised that the value of the farm was but little more than half the amount named in the exchange contract,—a fact concerning which there is now practically no dispute.

The circumstances attending the dismissal of the Jones county case may be properly alluded to in this connection. It seems that following some correspondence, Mrs. Holden went to Belle Plaine to see G. A. Allee. To him, while there, she stated that she was sick, and did not want to be engaged in litigation, and had come to see if there was not some way to avoid a trial. Some dispute exists in the record with reference to what occurred at this conference, but we think it is fairly made to appear that nothing more than an armistice was agreed upon; that Mrs. Holden was to

dismiss the pending suit, but without prejudice to her right to institute another for the same cause; that Allee was to keep the note and mortgage here in suit, and to forbear payment of interest thereon until March 1, 1900; that in the meantime every effort was to be made to dispose of the farm, and, if possible, realize enough therefrom so that out of the proceeds the matter in controversy as far as possible might be settled up. Whether Mr. Milner was fully advised as to the details connected with the conference is not made to appear. That he prepared the instrument intended to accomplish the dismissal of the suit—and this at the request of Allee—and that he took possession of such instrument after being signed by Mrs. Holden, and thereafter retained it, are facts established by the evidence of Mr. Milner himself. Therefrom he must have known at least that no settlement of the subject-matter of the action had been reached inasmuch as by the very terms of such instrument, drawn by him, it was provided that the dismissal was without prejudice, and that accordingly a new action affecting the validity of the note and mortgage might be instituted on the same or any day thereafter.

Coming to the purchase of the note and mortgage by plaintiff, it is the testimony of Mr. Milner that some time before July 3, 1899, the plaintiff, who was a near neighbor, came to him stating that he had some money to loan, and requested that a suitable customer be found therefor. Milner says, "I told him I would look around, and if I could see what I thought a number one good investment, I would make it and let them know." He then says that Allee came to him wanting to sell the Holden note and mortgage, following which Milner again saw Brown and recommended the purchase thereof as a good investment. He says he told Brown of the circumstances relating to the note and mortgage and received the reply, "All right, if you think this is good and safe, make the

investment." Brown does not appear as a witness. Accepting the statement of Mr. Milner that he told Brown the circumstances having relation to the note and mortgage, it follows that Brown knew, in point of fact, what Milner knew; that is, that Mrs. Holden had made an attack upon the instruments as having been procured by fraud and false representation; that such instruments were void for want of consideration, etc. He knew the grounds upon which such attack was based, and he knew that nothing stood in the way of the institution at any time of legal proceedings for the enforcement of the rights as claimed by her, including the cancellation of said note and mortgage. Whether Milner knew, and so communicated to Brown, the fact that in disposing of the note Allee was acting in bad faith towards Mrs. Holden, is, in our view, immaterial. So too, it is no answer to the proposition involved to say that neither Milner nor Brown expected or believed that Mrs. Holden would ever commence another action. They knew that she had the right so to do, and there is not pleaded as against her any estoppel, based upon an averment that she had by any means misled or deceived them cr the Allees in the premises.

Such are the circumstances presented, and therefrom it is clear that Brown was doubly advised of the facts connected with the making of the note and mortgage and that Mrs. Holden claimed to have a defense thereto. In the transaction Milner was acting as the agent of Brown. As a matter of law what Milner knew Brown knew; as a matter of fact what Milner knew Brown knew. But one conclusion can be drawn from the record as it is presented. One who purchases negotiable paper, even for full value and before due, with knowledge that the maker thereof claims to have a defense which has not been waived or satisfied, does so at his peril, and the instrument will be subject to such defense or charge of infirmity in his hands. The proposition of law thus stated is too well settled to

require a citation of authorities, but see *Richards v. Monroe*, 85 Iowa, 359; *Payne v. Raubinek*, 82 Iowa, 587; 4 Am. & Eng. Ency. 302, and cases cited. And the rule is the same if the purchase be made through an agent to whom such notice or knowledge can be traced. In such cases the principal is chargeable with the notice to or knowledge possessed by his agent. *Merrill v. Packer*, 80 Iowa, 542; *Merrill v. Hole*, 85 Iowa, 66.

Submitted with the case were two motions, one to strike the abstract of appellants and one to strike the amendment to abstract filed by appellee. Both motions are overruled.

The decree of the court below was right, and it is AFFIRMED.