## KERSHAW et al. v. JULIEN.
### No. 1021.

Circuit Court of Appeals, Tenth Circuit.
July 27, 1934.

Chester Stevens, of Independence, Kan., for appellants.

Walter L. McVey and W. N. Banks, both of Independence, Kan. (O. L. O'Brien, of Independence, Kan., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Mrs. Hershey, testate of appellee, lived in Independence, Kansas, for a number of years and was a customer of The Commercial National Bank of that city.[1] From time to time she purchased real estate mortgages from the bank and from Geo. T. Guernsey, its president. Back in 1923 or 1924 Guernsey assured her that any mortgages sold her would be "first class loans * * * first class in every way." She moved to California about 1923, but remained a customer of the bank and continued to purchase mortgages from it by mail. In the correspondence, the bank at times described mortgages offered her as "desirable" or "choice." She was well along in years, crippled, deaf, and in poor health.

Another customer of the bank was L. A. Lockwood. In 1927 he was heavily indebted to the bank and hopelessly insolvent. His indebtedness to the bank was a matter of concern to it; one $10,000 note had been charged off, and others were precariously secured. When he died in November, 1927, he owed the bank $17,910, in addition to the $12,500 indebtedness on the mortgage in controversy. His estate grossed $700. His finances in August were in about the same condition, that is, he was indebted to the bank for about $30,000 and had nothing but worthless equities. The bank knew of his financial distress.

Shortly before this, Guernsey owned a sheriff's certificate of sale to 320 acres of land near Independence. Half of it was covered by black-jack or scrub-oak timber, without grass or water; "it won't summer ten head of stock"; of the rest, 130 acres were under plow, part of it hard-pan, part white alkali, part subject to overflow. There were no improvements on it to speak of. Well posted witnesses agreed that its fair market value in 1927 was $4,000.

Guernsey transferred his certificate of sale to Lockwood, to whom the sheriff executed his deed on September 8, 1927. Lockwood gave a mortgage on this land to the bank for $12,500 in October, 1926, nearly a year before the sheriff's deed to him. In August, 1927, the bank assigned this mortgage without recourse to Mrs. Hershey, then residing in California, charging her account with $12,757.17, the face thereof and accrued interest, and kept the proceeds, crediting it upon Lockwood's indebtedness to the bank.

Mrs. Hershey, assuming that it was a "first class mortgage" with a reasonable margin of value over the encumbrance, kept it. Lockwood paid no interest, but the bank paid the interest regularly until it failed, thus lulling Mrs. Hershey into inaction.

When the bank failed in March, 1930, Mrs. Hershey learned that she was the victim of a contemptible scheme to palm off on her a mortgage which the bank knew was next to worthless in order to reduce Lockwood's indebtedness to the bank. She filed a claim with the receiver of the bank for $7,757.17, the difference between the price she paid for the mortgage, and $5,000 which, for some reason, she conceded to be the value of the mortgage.

The receiver rejected the claim and this action followed. The facts are alleged, with appropriate allegations of the fraud and deceit practiced upon her. The prayer is for a prior and preferred claim against the assets in the hands of the receiver of the bank, and against those assets purchased by the Security National Bank. The answer is a denial of the fraud, an averment that Guernsey was the agent of Mrs. Hershey and not the bank, and that the bank had no lawful authority to act as her agent in the investment of her funds.[2]

---

[1] Herein referred to as "the bank."

[2] When this cause was removed from the state court, it was docketed as a law case. Upon motion of appellants it was transferred to the equity docket. While the primary redress sought is damage for fraud and deceit, sounding in law, the power of equity to impress a trust was invoked. Whether the cause was properly transferred is not before us; the transfer was upon appellants' motion and appellee acquiesced. Upon the authority of Twist v. Prairie Oil & Gas Co., 274 U. S. 684, 47 S. Ct. 755, 71 L. Ed. 1297, we review "the case on the merits as on an equity appeal."

The trial court found that Mrs. Hershey was defrauded and allowed the claim against the receiver; it further decreed that the receiver should accord the claim priority over unsecured creditors, and awarded judgment against the Security National Bank and impressed a trust upon assets acquired by the Security National Bank from the Commercial National.

■ This order, in so far as it allowed a common claim against the receiver of the Commercial National Bank, is eminently just and manifestly correct. Incontrovertible and undisputed evidence, much of it documentary, established the fraud beyond the shadow of a doubt. The defense attempted on the facts was so weak as to challenge its good faith. Not a witness was brought forward to testify that the land was worth in excess of $5,000. The only justification offered for this cruel hoax was Guernsey's testimony that he, relying upon a purported appraisal of a Mr. Kerr with whom he had many business relations, believed the mortgage was well secured. The trial court did not believe Guernsey; neither do we. Kerr was not called as a witness. In order to be a "first class" mortgage, as that term is well understood in investment circles in Kansas, the land must have had a fair value of at least $20,000. That Kerr should undertake to deceive the bank, or that Guernsey, the active head of this bank for many years, should be so grossly deceived as to the value of land in his immediate vicinity, and which he had purchased at a sheriff's sale, is too incredible for belief or further comment.

■■ But, counsel argue, rigid rules of law intervene to prevent the righting of this wrong. If true, it is a grave reproach to our jurisprudence. But it is not true; rules of law are not as inflexible as counsel assert; if the decided cases afford no precedent for the redress of the wrong here perpetrated, then a precedent should now be established. The genius of the common law is its flexibility, a virtue arising from the determination of courts of long ago that justice should be done. But we need not depart from long settled rules to affirm the allowance of this claim. It is true that fraud is never presumed, but must be clearly established. But it may be, and more often is, established by circumstantial evidence. United States v. Mammoth Oil Co. (C. C. A. 8) 14 F.(2d) 705, affirmed 275 U. S. 13, 48 S. Ct. 1, 72 L. Ed. 137. The fraud here is clearly proven by irrefragable evidence; no other rational conclusion is possible. It is said there was no direct representation that the mortgage was a good one; we need not stop to inquire what representations are implied when a bank offers a customer, for the purpose of investment, a mortgage at par; when Mrs. Hershey started buying mortgages from the bank there was a direct representation that mortgages offered her would be "first class in every way." That representation need not be reiterated with every offering.

■ We are then told that statements as to value are expressions of opinion, and not representations of fact. That depends. There is room for honest difference of opinion as to the value of most things; and where men barter on equal terms, opinions expressed as to value are ordinarily not relied upon and not important. But a statement by an experienced banker to a confiding customer that a note is amply secured, when he knows it is not, is more than an expression of opinion; it is a deliberate misrepresentation of a fact.

■ Furthermore, the hypothesis that the bank is liable only if it affirmatively misrepresented a material fact is not sound. That rule applies when those upon an equal footing deal at arm's length. The situation here put upon the bank the obligation to disclose all facts known to it which were material to the transaction. Mrs. Hershey had been a customer of the bank for years; she had bought many mortgages from it; she had been assured that investments offered her would be first class in every way; she had purchased mortgages from the bank through the years in reliance upon such assurance. Having gained her confidence by such course of conduct, it may not escape responsibility for its abuse by invoking a rule applicable between strangers. When such a state of confidence exists, it is the duty of him in whom the confidence is reposed to disclose every material fact within his knowledge. Bacon v. Soule, 19 Cal. App. 428, 126 P. 384. When there is a duty to speak, the suppression of the truth is as reprehensible and as actionable as the utterance of the false. The Kalfarli (C. C. A. 2) 277 F. 391, 400; Copper Process Co. v. Chicago Bonding & Ins. Co. (C. C. A. 3) 262 F. 66, 73, 8 A. L. R. 1477; New York Life Ins. Co. v. Gay (C. C. A. 6) 36 F.(2d) 634, 638; Nairn v. Ewalt, 51 Kan. 355, 32 P. 1110. In Tyler v. Savage, 143 U. S. 79, 98, 12 S. Ct. 340, 346, 36 L. Ed. 82, the Supreme Court held that "This suppression of a material fact, which Tyler was bound in good faith to disclose, was equivalent to a false representation." So here; the gross inadequacy of the secu-

rity and the insolvency of the makers were material facts which the bank knew and suppressed although bound in good faith to disclose.

The claim that Guernsey was the agent of Mrs. Hershey instead of the bank finds no support in the record. Mrs. Hershey purchased a mortgage from the bank, the bank acting through its president and active managing officer. The bank took and retains the purchase price of that mortgage. Retaining, as it does, the proceeds of the transaction, it is not in position to deny either the authority of its president or its power to sell a mortgage. National Bank of Commerce v. Equitable Trust Company (C. C. A. 8) 227 F. 526, 533; General Paint Corporation v. Kramer (C. C. A. 10) 57 F.(2d) 698, certiorari denied 287 U. S. 605, 53 S. Ct. 10, 77 L. Ed. 526; Maryland Casualty Co. v. Beebe (C. C. A. 10) 54 F.(2d) 743; Carbon County Land Co. v. United States (C. C. A. 10) 46 F.(2d) 980, affirmed 284 U. S. 534, 52 S. Ct. 232, 76 L. Ed. 469; Citizens' Central National Bank v. Appleton, 216 U. S. 196, 30 S. Ct. 364, 54 L. Ed. 443; Aldrich v. Chemical National Bank, 176 U. S. 618, 20 S. Ct. 498, 44 L. Ed. 611; Johnson v. Schrag, 134 Kan. 80, 4 P.(2d) 450.

The trial court properly heard evidence offered, although indicating doubt as to its admissibility. Equity Rule 46 (28 USCA § 723); Hughes v. Reed (C. C. A. 10) 46 F.(2d) 435. Where rulings as to the admissibility of evidence are reserved, they should be made before the conclusion of the trial. Guernsey's testimony was admissible; while the trial court's ruling thereon is not in the record, we have considered it for what it is worth. Other errors assigned have been considered but need not be discussed.

The decree below gave appellee priority over all other unsecured creditors of the bank and rendered a judgment against the Security National Bank. This part of the decree is erroneous. Appellee contends that a trust arose in favor of Mrs. Hershey, and since the cash of the bank at all times was more than her claim, that she is entitled to priority. The cases cited by counsel are those wherein the bank obtains money or property from a customer by fraud and a trust was impressed upon the moneys or property so obtained. But in this case, the first requisite of a trust, the obtaining of property or the augmentation of the assets of the bank, is lacking. Nothing was obtained by the bank by the fraud; Mrs. Hershey's money was obtained through a general deposit. A general depositor is not entitled to priority. Before the transaction complained of, Mrs. Hershey had a general claim sounding in contract; after the transaction, she had a general claim sounding in tort; neither is entitled to priority. The assets of the bank were not augmented by its fraud, for no new money or property came into the bank. The bank's indebtedness to her was reduced, and Lockwood's indebtedness to the bank correspondingly reduced. It was a mere shifting of credits. Since there was no identifiable thing which could be the subject of a trust and no augmentation of the bank's assets, manifestly the assets in the hands of the receiver were not increased by the transaction. There is no reason therefore for preferring appellee over other creditors of the bank. Kershaw v. Jenkins (C. C. A. 10) 71 F.(2d) 647; Kershaw v. Kimble (C. C. A. 10) 65 F.(2d) 553; Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288.

The decree will be modified by eliminating the provisions as to interest and preference and the Security National Bank; otherwise, the decree is affirmed.

Modified and affirmed.