DYE et al. v. FARM MORTGAGE INV. CO. OF TOPEKA, KAN.

No. 1101.

Circuit Court of Appeals, Tenth Circuit.

Dec. 17, 1934.

See, also, 70 F.(2d) 514.

Frank G. Drenning, of Topeka, Kan., for appellants.

Otis S. Allen, of Topeka, Kan. (George S. Allen, of Topeka, Kan., on the brief), for appellee.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

An amended complaint, held bad on demurrer, set up false warranty of the collectability of three $1,000 promissory notes purchased by plaintiffs from defendant. The false representations relied on as constituting the warranty were not primarily made by the defendant company. They were made in principal part by William T. Pierce and J. P. Slaughter in writing and were directed to the defendant. It adopted and passed them on to appellants in its transactions with them, which resulted in the purchase of the three notes.

Taking the allegations of the complaint to be true as against the demurrer, the material facts were these: Slaughter, president of defendant company, was the owner of a 675-acre farm in Schuyler county, Missouri. On April 25, 1923, he conveyed the farm by warranty deed to Pierce. Pierce made application in writing to defendant company on May 15, 1923, for a $25,000 loan to be secured by mortgage on said farm. In that application he stated that of the 675 acres, 570 was bottom land; that 450 was in cultivation, and 600 acres could be cultivated; that 250 acres was subject to overflow; that there was a seven-room two-story frame house, a seven-room frame cottage, barns, cribs, granary and shop on the farm; that the farm had been in cultivation for forty years; that he purchased it in the year 1923; and paid $67,500 for it; that title to the farm was vested in him; that he was in actual possession through a tenant whose term would expire January 1, 1924; that he was worth in real estate and personal property $57,500 above all liabilities, and that his statements in relation to the property and his liabilities and assets were substantially true in every particular; that his occupation was farmer; that the then cash value of the land and improvements was $67,500, and that the cash selling price per acre of improved land in the vicinity of the farm was $75 to $150; that he then had on the farm 12 horses, 28 cows, 50 hogs, and a general supply of implements; and that he was borrowing the money to pay existing liens on the farm. He made oath to his application. The complaint alleges that prior thereto and on May 10, 1923, Pierce and wife conveyed by warranty deed the farm back to Slaughter.

Slaughter, acting as examiner for the defendant company, made a report to it as to the advisability of its making the loan to Pierce. He certified in writing that on May 23, 1923, for the purpose of ascertaining the value and desirability of the farm as security for the loan he made a careful examination of the land described in Pierce's application containing 675 acres in Schuyler county, Missouri, and stated that the farm was owned by Pierce; that 600 acres of the farm could be profitably cultivated; that 450 acres was then in cultivation, 330 being in corn, 175 acres in grass, and 160 acres in other crops; that the soil was dark loam of excellent quality; that a fair value of the land with improvements was $67,500; that if offered at forced sale the farm would certainly realize not less than $60,000; that all statements contained in Pierce's application for the loan were true; that the farm was in good condition; that Pierce was of good character and credit; that he had been making money; that it was a good loan, and he believed it would prove safe and satisfactory in every particular. Endorsed on the back of Slaughter's report as examiner for defendant company was a statement addressed to it signed by Slaughter and one Collingwood, who designated themselves as loan committee, in which they said they endorsed the statements of Slaughter as examiner, believed the loan would be safe and desirable and recommended that defendant company accept it.

The complaint alleges that the defendant did accept the loan secured by mortgage and the $25,000 which it furnished was used to pay off prior mortgage liens. The defendant company then sold three of the 25 $1,000 notes to plaintiffs. They reside in the state of Tennessee, and the transaction with them and its consummation was carried on by U. S. Mail. It seems to have had its inception by letter of date October 30, 1923, addressed to one of the plaintiffs and signed J. P. Slaughter, President. The letter head contained this: "The Farm Mortgage Trust Company, Capital $150,000, Topeka, Kansas." In this letter the $25,000 loan on the farm is briefly described. It is stated that three bonds were still held by the defendant company and that "Perhaps one or more of these bonds would please you." The letter further says: "The writer was over this farm a few weeks ago, and it is producing 10,000 bushels of corn this year. The corn alone

will pay more than double the interest on the mortgage and taxes on the farm and have a little surplus. In addition to the corn there is hay and pasture to be accounted for."

On September 27, 1923, the defendant company prepared and executed what it denominated an agreement by it. It refers to the Pierce mortgage loan, states that the defendant company has sold the loan, tenders its services to note holders in collecting interest and principal, and contains this paragraph:

"That the property described in said mortgage has been carefully inspected by Mr. J. P. Slaughter, who is an experienced and trustworthy man connected with said Trust Company, and his report accompanying the papers, is based upon his personal investigation of both the security and the borrower and that the statements made in said report are materially true."

■ The complaint alleges that the three documents, Pierce's application for the loan, Slaughter's reported examination of the farm, and the so-called agreement of September 27, 1923, accompanied the letter of October 30, 1923, addressed to William M. Dye, and copies thereof are attached to said amended complaint and made parts thereof. It will be observed that many of the representations in Pierce's application and in Slaughter's report of his examination are statements of fact, while others, especially those of value, are as a general rule regarded only as expressions of opinion, and when so regarded they cannot be made the basis of an action for fraud, but as will be later seen there are exceptions to this general rule. The complaint attempts to bottom the false warranty almost entirely on the representations which constitute under the general rule mere opinion, prophecy or promise, including however with them the statement found in Slaughter's report of his examination, "All of the statements contained in said application (Pierce's) are true." On that set up it is not alleged that said representations were false and fraudulently made with intent to deceive and mislead plaintiffs, but it is alleged that said representations induced the plaintiffs to purchase said three notes. It would seem that Kimber v. Young (C. C. A.) 137 F. 744, 751, ought to be enough to inform any pleader of fair ability how to state the cause of action here relied upon. In that case, after full discussion of the first count which pleaded an action of deceit, the court said this of a count based on false warranty:

"In an action of false warranty it is not necessary to allege or prove the scienter of the defendant, and in that respect it differs from an action of deceit."

In other respects the rules of pleading in the two actions are the same. In that connection see: Schuchardt v. Allen, 1 Wall. 359, 368, 17 L. Ed. 642; Shippen v. Bowen, 122 U. S. 557, 7 S. Ct. 1283, 30 L. Ed. 1172; Smith v. Richards, 13 Pet. 26, 42, 10 L. Ed. 42; Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 S. Ct. 537, 28 L. Ed. 86; 2 Benjamin on Sales (with American notes) Chapter entitled "Warranty."

■ But coming to the representations by Pierce and Slaughter as to the value of the farm on which it is alleged plaintiffs relied and were induced to purchase the three notes we are convinced that those representations may be taken by a jury under the circumstances pleaded in this case, if proved, as statements of fact. It is to be observed that the defendant company in its so-called agreement commended to the plaintiffs Slaughter's report of his inspection of the property; that it had been carefully made, and it commended Slaughter as an experienced and trustworthy man for that service; that he was connected with the trust company; and that his report was based upon his personal investigation of both the security and the borrower and it vouched for the statements therein as materially true. Slaughter vouched for all that Pierce had said in his application. Pierce said that his occupation was that of farmer. The plaintiffs were residents of eastern Tennessee, and it was not probable that they could or would make a personal inspection of this farm, and it was probable that the defendant assumed that they would not inspect it. In Kershaw v. Julien (C. C. A.) 72 F.(2d) 528, 530, we said:

"But a statement by an experienced banker to a confiding customer that a note is amply secured, when he knows it is not, is more than an expression of opinion; it is a deliberate misrepresentation of a fact."

There the representation of the banker who sold the mortgage loan was that it was a "first class loan * * * first class in every way." In Shelton v. Healy, 74 Conn. 265, 50 A. 742, 744, a stockholder and director of a corporation sold stock on false representations as to its value. The court said:

"The representation of the defendant as to the value of the stock is not, in this case,

as claimed by the defendant, to be regarded as a mere expression of opinion, but as a statement of fact, which may be the ground for an action of deceit."

In Pinch v. Hotaling, 142 Mich. 521, 106 N. W. 69, 70, the court, after noting the general rule that the statement of value is a mere matter of opinion, said:

"But the rule established by the weight of authority is that false statements of value intentionally made to one who is in ignorance of the quality and value, under circumstances indicating a purpose that such statements are to be relied upon, and where the party to whom they are made has no opportunity to examine the property, may be treated as an affirmation of fact and fraudulent."

In Simar v. Canaday, 53 N. Y. 298, 13 Am. Rep. 523, Judge Folger, speaking for the court said, after stating the general rule, "But all statements as to value of property sold are not such. They may be, under certain circumstances, affirmations of fact." In Herdan v. Hanson, 182 Cal. 538, 189 P. 440, 444, the court said in reference to exceptions to the general rule:

"It will suffice to say that, when a statement concerning a subject-matter of a transaction, which might otherwise be only an expression of opinion, is affirmed as an existing fact material to the transaction and reasonably induces the other party to consider and rely upon it as a fact, the statement then becomes an affirmation of fact within the meaning of the general rule as to fraudulent representations."

Like holdings are found in Stonemets v. Head, 248 Mo. 243, 154 S. W. 108; Jacoby v. Hallada, 78 Wash. 88, 138 P. 558; King v. Inv. Co., 76 Iowa, 11, 39 N. W. 919; Rodee v. Seaman, 33 S. D. 184, 145 N. W. 441; Jarratt v. Langston, 99 Ark. 438, 138 S. W. 1003; Heal v. Stoll, 176 Wis. 137, 185 N. W. 242; Greig v. Inv. Co., 121 Or. 15, 253 P. 877; Scott v. Burnight, 131 Iowa, 507, 107 N. W. 422; Mountain v. Day, 91 Minn. 249, 97 N. W. 883; Dresher v. Becker, 88 Neb. 619, 130 N. W. 275; Werline v. Aldred, 57 Okl. 391, 157 P. 305, 158 P. 893; Whitney v. Richards, 17 Utah, 226, 53 P. 1122; Crompton v. Beedle, 83 Vt. 287, 75 A. 331, 30 L. R. A. (N. S.) 748, Ann. Cas. 1912A, 399; Teague v. Irwin, 127 Mass. 217; Cockrell v. Henderson, 81 Kan. 335, 105 P. 443, 50 L. R. A. (N. S.) 1; Byers v. Fed. Land Co. (C. C. A.) 3 F.(2d) 9; F. H. Smith Co. v. Low, 57 App. D. C. 167, 18 F.(2d) 817; Southern Trust Co. v. Lucas

(C. C. A.) 245 F. 286; Seimer v. Mortgage Co. (D. C.) 299 F. 651. In Gordon v. Butler, 105 U. S. 553, 26 L. Ed. 1166, the court held that an action would lie based on opinions of matters capable of approximating to the truth as false statements where deception is designed and injury has followed from reliance on them.

The demurrer to the amended complaint was upon two grounds. First. That it did not state sufficient facts to constitute a cause of action. Second. That the action was barred by the Kansas five-year statute of limitations (Rev. St. Kan. 1923, 60—306, cl. 1). But from all the facts set forth in the complaint, coupled with the statements of Pierce, Slaughter and the defendant company in its letter of October 30, 1923, and in its so-called agreement, we cannot doubt that there is enough in the complaint and exhibits, if proven, to make a false warranty, though not correctly and fully pleaded. And there are seemingly many representations of undoubted fact which would support a good plea of false warranty, if properly pleaded. The court did not indicate whether it sustained both grounds of the demurrer or only one, and if only one which one, so far as this record discloses. As to the second ground of the demurrer. We think it not well taken. Plaintiffs allege they paid for the three notes on or about November 2, 1923, and received them on or about November 7, 1923. According to their terms the notes fell due on May 1, 1928. This action was instituted March 10, 1932. The statute had not run. Nor, in our opinion, did the statute begin to run against the cause of action pleaded until the foreclosure sale under the mortgage which occurred in February, 1932, and nothing was realized therefrom for the note holders. It is alleged that on June 1, 1928, plaintiffs sued Pierce and Slaughter, the latter having assumed payment of said notes, in the state district court of Shawnee county, Kansas; that they recovered judgment against both defendants; that Pierce some months later was adjudged a voluntary bankrupt in the United States District Court for Kansas; that the three notes were filed as claims against his estate, and nothing was paid on them; that an execution was issued against Slaughter on the judgment, and it was returned: "Wholly unsatisfied. No goods or property found on which to levy." It is further alleged that when default was made in the payment of said notes plaintiffs demanded of defendant that it foreclose the deed of trust or mortgage on said farm as they believed it had agreed to do in its said

agreement of September 27, 1927, **and** that defendant wholly failed and refused **to do** so; that on April 2, 1931, plaintiffs *themselves began an action in the circuit court of Schuyler county, Missouri, to foreclose* said deed of trust, and on June 26, 1931, they obtained a foreclosure decree in said circuit court; that under said decree the sheriff sold said farm at public sale and the highest and best bid therefor was $3,000, and the court declined to approve the sale; that a second sale was ordered and made with like results; that finally the farm was sold and the sale approved for less than enough to pay prior liens for taxes and special assessments against it, all of the bid being applied by the court on said prior liens after payment of court costs; that plaintiffs have been unable to collect anything on said notes; that they had no personal knowledge of said farm and the improvements thereon until they went to Schuyler county, Missouri, in August, 1931, to attend the sale of said farm, and then first discovered its true character and value.

A warranty and a guaranty are of much the same character in transactions like the one involved here. The farm was pledged under the mortgage as security for the indebtedness, and it was the duty of plaintiffs to exhaust that security and apply what could be obtained therefrom, if anything, on the indebtedness before it sought to hold defendant on its warranty. In Barman v. Carhartt, 10 Mich. 338, the supreme court of that state said:

"Although a mortgage is in a strict sense merely collateral to a debt, yet it is generally regarded as forming its chief value, and persons usually contract with that idea. A person guaranteeing the collection of such a debt, and assigning the mortgage with it, must, we think, be held to contemplate a collection by means of the mortgage, and not to anticipate that he will be looked to until the creditor has resorted to that."

In this case when the defendant assigned the three notes to the plaintiffs without recourse it also assigned to them a 3/25ths interest in the mortgage. In Union National Bank v. First National Bank, 45 Ohio St. 236, 13 N. E. 884, the plaintiff bank purchased of the defendant bank notes on a statement of the latter, "We know them to be good." The plaintiff having used due diligence without avail to collect the notes made demand of payment from the defendant on its said statement, and it was held that the plaintiff, having used due diligence to collect from maker and endorser, had a right to recover of the defendant.

The twenty-five $1,000 notes given by Pierce were made payable to "The Farm Mortgage Trust Company." The mortgage given to secure payment of these notes named, "The Farm Mortgage Trust Company, a corporation," as party of the second part. Yet the pleader makes "The Farm Mortgage Investment Company of Topeka, Kansas, a corporation," defendant without any explanation for the difference in corporate names. We assume, without deciding, that the error can be corrected as a mere clerical mistake. It may be the corporate name was changed, and there was no mistake, but if changed it should have been so stated.

We reverse the judgment dismissing the complaint and remand the case to the District Court with directions that plaintiffs be given further opportunity to plead their cause of action in an amended complaint so that, if they have a cause of action, it may be put in proper form.