JOHNSON v. CITY CO. OF NEW YORK, Inc.
No. 1209.

Circuit Court of Appeals, Tenth Circuit.
July 9, 1935.

James R. Jones, of Denver, Colo., for appellant.

Montgomery Dorsey, of Denver, Colo. (Gerald Hughes and Clayton C. Dorsey, both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an action at law to recover damages. Plaintiff instituted the suit in two counts against the National City Company, a corporation organized under the laws of the state of New York with an office in Denver, Colorado. The corporate name of the defendant was changed during the pendency of the suit to the City Company and that substitution was made of record.

It was alleged in the first count that on November 1, 1929, plaintiff purchased from defendant at Denver 200 shares of capital stock of the National City Bank of New York at $450 per share, aggregating $90,-000; that as a part of the sale defendant warranted that by November 4th—three days thereafter—the market price of the stock would be $650 per share; that the

warranty was a material consideration for the making of the purchase and that plaintiff would not have bought without it; that the market value of the stock did not reach $650 per share at the specified date, but instead it dropped materially below the purchase price; that on November 6th he sold 100 shares at $295 per share less brokerage charge and on the next day he sold the remaining 100 shares at $270 per share less brokerage charge, each sale being made at the best price then obtainable and to avoid further loss; that the loss directly sustained upon the stock was $33,573.20; that the purchase and subsequent decline in value of the stock placed plaintiff under a financial obligation which forced him to sell other stock at a loss of $10,295.12 in order to protect himself.

The second count charged that defendant was an affiliate of the National City Bank, the two having certain officers and directors in common; that for more than five years prior to the transaction in question defendant represented and held itself out to plaintiff and others as being peculiarly fitted and situated to advise prospective purchasers with respect to the purchase of stocks and their value; that at the time of the transaction an arrangement existed between defendant and the bank through which each purchaser of stock in the bank thereby obtained a beneficial interest in the shares of stock of the defendant; that by reason of these facts defendant was well fitted to know the value of the stock being offered plaintiff; that defendant represented to plaintiff that the stock then had a value of $650 per share; and that plaintiff would be able to sell it for that price on November 4th. The other material allegations were similar to those contained in the first count. Judgment was prayed for $43,863.32, that sum representing the loss sustained on the stock in question and on the other stock which was sold.

The court sustained a demurrer to the second count and at the conclusion of plaintiff's evidence directed a verdict for the defendant on the first count. Judgment was entered accordingly, and plaintiff appealed.

■ Adopting the order in which the parties present the questions, we first consider the action of the court in sustaining the demurrer to the second cause of action. Two statements made by the defendant in connection with the sale are the foundation of the action. They were that the stock then had a value of $650 per share and that it could be sold for that price three days later. The statement respecting value necessarily had reference to its intrinsic value, because it was a listed stock of wide circulation and plaintiff knew that its then quoted market value was $450 per share. Ordinarily, a statement with respect to the intrinsic value of property which is the subject of barter and sale constitutes a mere expression of opinion and consequently will not support an action for breach of warranty. Kimber v. Young (C. C. A.) 137 F. 744; Zimmern v. Blount (C. C. A.) 238 F. 740. There is one well-recognized exception to that general doctrine. It is that where the seller makes a statement of that kind which he knows to be false to one who is ignorant of the facts and has no means of ascertaining them, under circumstances reasonably indicating that the statement is being relied upon, it becomes a deliberate affirmation of fact and may be the basis for recovery. Kershaw v. Julien (C. C. A.) 72 F.(2d) 528; Dye v. Farm Mortgage Inv. Co. (C. C. A.) 74 F.(2d) 395. But this case does not come within the exception. The subject-matter of the transaction was stock sold daily on the open market throughout the country. It was quoted currently and its market value was known on that day. It was not alleged that plaintiff lacked experience in the purchase of stocks or was unfamiliar with the means of ascertaining their worth and that defendant wrongfully took advantage of that situation in making statements which amounted to an affirmation of value upon which he had a right to act. That controlling fact distinguishes this case on clear ground from many upon which plaintiff relies, in which an ignorant and confiding purchaser without available means of knowledge relies upon statements of that nature made by the seller.

■ That part of the statement that the stock could be sold three days later at $650 per share was merely the expression of opinion, prophecy, or prediction. Even though such a statement is positive and emphatic, it lays no foundation for action since one must know that another cannot penetrate the future and forecast with reasonable certainty the course which the many fluctuating factors entering into value of stock will take. For that reason, one who gives credence to such statements and acts upon them does so at his peril and cannot have recourse in law for the recovery of damages if they fail to material-

ize. Crosby v. Emerson (C. C. A.) 142 F. 713; Towle v. Maxwell Motor Sales Corp. (C. C. A.) 26 F.(2d) 209. We think the court was right in sustaining the demurrer.

■ Was it error to direct a verdict for defendant on the first cause of action? It appears from the complaint and the proof that in the course of the negotiations an agent for defendant stated that it would guarantee that the stock would sell for the increased price three days thereafter, but no promise was made or even suggested that defendant would take it back if it failed to reach that figure. In the absence of extraordinary circumstances, a statement made in connection with the sale of property concerning its value must relate to a present, existing fact in order to constitute a contract of warranty. The word guarantee or warrant has no magic within itself. Use of either does not convert a statement in respect of future value into a contract of warranty upon which recovery may be had. If the statement relates to value at a future time, it is an expression of opinion, prophecy, or prediction, although it may embrace either of those words. A false statement or representation as to what the declarant expects to occur in the future, made by one having peculiar or extraordinary contacts and professing to have superior knowledge as the result, may constitute a representation of an existing condition which will support recovery for fraud. Seimer v. James Dickinson Farm Mortgage Co. (D. C.) 299 F. 651; Wendell v. Ozark Orchard Co. (Mo. App.) 200 S. W. 747; State v. Taylor (Mo. Sup.) 73 S.W.(2d) 378, 95 A. L. R. 476. But this case falls well outside the boundaries of that rule. Plaintiff was a business man of wide experience. He had dealt extensively in stocks and bonds. He had conducted 129 transactions with defendant alone covering a period of about ten years and aggregating more than $340,-000 in amount. In addition, he had invested large sums in stocks for several oil companies with which he was associated and most of such investments were made through brokers. He usually visited the offices of defendant two or three times daily; he maintained an active account with a brokerage company in New York and he was conversant with the manner in which listed stocks and bonds were sold. He knew that the stock in question was listed throughout the country; that it was quoted daily on the market and he must have known that any statement with respect to its market value three days in the future was in essence and effect a mere expression of opinion or prediction. In these circumstances, he cannot be heard to say in a court of law that the statement was a warranty upon which he relied and acted.

■ One other question remains for consideration. The warranty in suit was given by the manager in charge of defendant's office in Denver. He was a general agent, but there was no proof that he had authority to give a warranty of that kind and the burden was on plaintiff to establish such authority. Moore v. Switzer, 78 Colo. 63, 239 P. 874. A general agent may not transcend the scope of the usual course of the business intrusted to him. Willard v. Mellor, 19 Colo. 534, 36 P. 148; Montez v. George, 68 Colo. 247, 188 P. 723. Authority to warrant that stock can be sold at a specified price on a fixed day in the future cannot be implied from a general agency to conduct a brokerage business and there was no evidence tending to show that it was the custom for the manager to do so; in fact, it was not shown that he had ever done so on any other occasion. But plaintiff urges that defendant cannot retain the benefits of the transaction and at the same time repudiate the authority of its agent to make it. That general doctrine applies where the principal has not changed his position between the time he receives the benefits and the time he acquires knowledge of the unauthorized act. Restatement of Agency, section 99. Of course, if a principal receives benefits and before changing his position learns of the unauthorized collateral provision in the contract, his retention of the benefits constitutes ratification of the ultra vires act, but there is nothing here to indicate that defendant acquired knowledge of the agent's unauthorized act intermediate receipt of the benefits and a change of its position; and it was incumbent upon plaintiff to establish those facts in order to avail himself of the principle of law upon which he depends.

Concluding that there was no error in the trial proceedings, the judgment is affirmed.